## DUNN, ET AL. v. DAVIS.

| 12 | 135 |
| 133 | 232 |

1. A bequest of slaves "to my daughter Mina, during her natural life, and at her death to her heirs, or children," is not an estate tail, and vests a life estate only in the daughter—her children taking vested remainders.

2. A demand is not necessary when the action is detinue, although the defendant, previous to the action, held possession under one having the life interest.

Dunn, et al. v. Davis.

Writ of Error to the Circuit Court of Shelby.

DETINUE by Joseph B. Dunn and others, against Davis, to recover a certain slave.

At the trial, the plaintiffs made title to the slave in controversy, under the will of Archer Barton, which contains this clause : "I give to my daughter Mina, during her natural life, and at her death to her heirs, or children, my negro man, Abram."

They then proved this will was made in the year 1832, in Lowndes county, in this State—that Mina therein named was then the wife of Solomon W. Dunn—that both husband and wife died in the State of Arkansas, previous to the commencement of this suit—and that the plaintiffs are the children of the said Mina Dunn.

The defendant offered evidence tending to show the said slave, in 1840, was levied on by virtue of a *fi. fa.* in favor of S. Ciley, against Solomon W. Dunn, and then sold under the same, as well as that he was purchased and paid for by the defendant. No demand in terms was shown previous to the commencement of the suit.

On this evidence, the court charged the jury, the plaintiffs were not entitled to recover.

Plaintiffs excepted, and now assign this charge as error.

CHILTON, for the plaintiff in error.

1. That from the entire clause it was clear the testator intended his grandchildren, to take as purchasers, and that the remainder to them was vested, not contingent. [4 Kent's Com. 212 ; Goodright v. White, 2 Black. Rep. 1010 ; Woodley v. Findley, 9 Alabama Reports, 720 ; McGraw v. Davenport, 6 Porter's Rep. 319 ; Fellows v. Tann, 9 Ala. Rep. 999 : Dingly v. Dingly, 5 Mass. 535 ; Dunlay v. Dunlap, 4 Dess. 305, 318; 4 Paige, 293 ; 7 Paige, 328 ; 7 Paige, 544; Davis v. Tant, 6 Dana, 52.]

T. D. CLARK and S. F. RICE, for the defendant in error, argued—

1. By the term heirs, the testator referred to those who take the estate by operation of law; and therefore they cannot be considered as purchasers. [Shelly's case, 1 Rep. 93; Price v. Price, 5 Ala. Rep. 578; Harkins v. Coalter, 2 Porter, 463.]

2. If however, the title is in the children of Mrs. Dunn, as purchasers, then, as the defendant's possession was lawful, a demand was necessary after the death. [Stewart v. Frazer, 5 Ala. Rep. 114.]

GOLDTHWAITE, J.—1. I feel some degree of hesitation in expressing my individual opinion in regard to the construction of this will, inasmuch as it differs entirely from that of a majority of the court. What did the testator mean by the terms heirs, or children, must be the common question to be answered by all, for it is that intention which must be carried into effect if it be consistent with law. I understand him to mean, not merely children which should be living at his death, but all who should be subsequently born to his daughter. I also understand him to mean a matter greatly beyond this, and that if when his daughter died, there should be grand-children, or even more remote descendants, these also were to be the recipients of his bounty, if their parent descended from his daughter had ceased to live. This to me seems clear, from the use of the term heirs, or children. It then comes to precisely this—a gift to his daughter during her natural life, and at her death to her issue. If the will contained these terms, an estate tail in the most simple form would be created. That the testator intended to create such an estate, seems to me clear, from the circumstance of his omitting to make any limitation over in the event of his daughter's leaving no issue living at the time of her death. It seems evident to me, the testator considered himself as parting, by the bequest, with the entire interest in the property thus given to his daughter, and this is confirmed by the circumstance that he afterwards constitutes residuary legatees, without in any manner adverting to any reversion which might be supposed to arise from the failure of the issue *in tail*. Would it be a proper construction of this will,

to invest the residuary legatees under·the will, or the general distributees of the testator, supposing him intestate, as to the reversion in this slave, with the title, if Mrs. Dunn, instead of leaving children had left only grand-children, or their descendants when she died? I state the question because its answer seems to me decisive of the case presented. If it is answered, there is no reversion until the descendants of children fail, as well as children, then the conclusion seems to me irresistible, that the terms used by the testator were intended in no other sense than as heirs of her body, and the will may be read, "I give to my daughter Mina, during her natural life, and at her death to the heirs of her body."

I am aware there are a series of decisions in the English chancery, which hold that children shall not be construed to include grand-children, or other descendants, and that the term is never equivalent to *issue*, unless a clear intention to make it so, appears from other terms in the will, but to my apprehension, the rule itself rests on most questionable grounds, and never could have been adopted, if children there, as with us, stood as general heirs. The first case is Cook v. Brocking, 2 Vern. 107, where a legacy was vested in trust to secure Ann Crewe a maintenance out of the interest during her husband's life, with the absolute disposal of the principal if she survived him, but if he was the survivor, the money to go to her sister's children, as she should advise. Ann died before her husband, without giving any direction, leaving an only sister, who at Ann's death had one child, and several grand-children in existence. Lord Jeffries determined the fund should be divided between the only child and the grandchildren, but his decision was reversed by the Lords Commissioners on a re-hearing. This was followed in Rives v. Brymer, 4 Vesey, 692, in a case where the bequest was by a father, which was directed to be equally divided between his children, who should be living at the death of his wife, and grand-children were excluded. To the same effect is Radcliffe v. Buckley, 10 Vesey, 195. It is true, these decisions seem to turn on the construction of the testator's intent, but it cannot be disguised that the intention of a will in England might be quite different, so far as children are concerned, from what the same words used here would indicate. Of

Dunn, et al. v. Davis.

course I shall not be misunderstood as extending this remark beyond the distinction existing in letting in all children with us, as general heirs ; and in this sense I apprehend the word children, with us, is most frequently used as heirs. Whatever might be the proper construction of such terms, when unexplained, the introduction in this will of the term heirs seems to me clearly indicative that the testator considered them as equivalent and convertible terms.

Having arrived at the conclusion that this will is to receive the same construction as if the words, heirs of her body were found where heirs, or children occur, it seems to me that no particular class of heirs is designated, and therefore that they are words of limitation, and not of purchase. If Mrs. Dunn was the devisee of real estate, in the same terms, an estate tail would be created within the rule of Shelly's case, and in accordance with all the cases, personal estate bequeathed by similar terms, vests absolutely in the first taker. [2 Roper on Leg. 351, 357, and cases there cited. See also, Robinson v. Fitzherbert, 3 Bro. Ch. 127.]

This is the course of reasoning which has led my mind to the conclusion, that the entire estate in the slave in controversy, under the will, vested in Mrs. Dunn, and consequently passed to her husband in virtue of his marital rights, but a majority of the court consider the will as investing her only with a life estate, and that the remainder was in the children of Mrs Dunn, whether in *esse* at the death of the testator, or born subsequently. They consider it settled, that the term children, is in general, a word of purchase, and is to be construed as a term of limitation, only when it is absolutely necessary so to construe it, to carry into effect the testator's intention. [Buffer v. Bradford, 2 Atk. 221.] They also hold, this case as within the reason of the decision of Crawford v. Trotter, 4 Madd. 361, where a bequest to a female "and her heirs, (say children,") was held to give her only a life estate with remainder to her children. In addition to the English cases, the majority of the court are sustained in their view by Knight v. Wall, 2 Dev. & Batt. 125, where a will in very similar terms to those used in this, was considered as vesting an estate in slaves in all the children of the person having the life estate, whether born before or after the death of the

testator.    The result is, that the title of the plaintiffs is suffi-
cient to warrant a recovery. of the slave, and it was error to
instruct the jury otherwise upon the evidence.

2. As to the question that no demand was made for the
slave previous to the action, we all consider this immaterial,
when the suit is in detinue.    [Knight v. Wall, 2 Dev. & Bat.
125.]    In that action, nothing but the title is in controversy,
except in some peculiar cases, where the party, notwith-
standing his title, is not entitled to the immediate possession.

Judgment reversed, and cause remanded.

COLLIER, C. J.—The intention of the testator is the pole
star in the construction of wills, and whenever consistent
with law, it will be supported.    It is perfectly clear to my
mind, that the term " heirs," in the clause in question, is not
to be received in the sense in which it is generally under-
stood, as applied to *real estate*, or where used without restric-
tion.    The word " *children*," which is connected with it by
the disjunctive " *or*," shows that it was intended as *designa-
tio personarum*.    This conclusion seems to me to be an ob-
vious sequence, when the purpose of the testator, and the fact
that the subject of the gift is personal property, are consider-
ed.    We must take the words " *heirs or children*" in refer-
ence to the connection in which they are found, and to what
must have been the testator's intention.    Subjecting them
to this test, I cannot doubt that " *heirs*" was used as a word
of purchase, and consequently that the mother did not take
an absolute estate, so as to let in the creditors of her husband
to the exclusion of her children.    I consider this point so
well settled upon authority, that I will not amplify this opin-
ion.    [See Vaux v. Henderson, 1 Jac. & W. Rep. 388, n;
Lovelady v. Hopkins, Amb. Rep. 273; Bowers v. Porter, 4
Pick. Rep. 198; Richardson v. Wheatland, 7 Metc. R. 173,
174; 2 Jarm. on Wills, 73, and notes; Carter v. Bentall, 2
Beav. Rep. 551; Swift v. Swift, 8 Sim. Rep. 168; Newland
v. Curshman, 2 Moore & S. Rep. 105; Ridgeway v. Munke-
thick, D. & W. Rep. 84; Dalzell v. Welch, 2 Sim. Rep.
320; Gale v. Bennett, Amb. Rep. 681; Wyth v. Blackman,

2 Ves. Sen. Rep. 191; Merrymans v. Merrymans, 5 Munf. Rep. 440.] Many other citations quite as pertinent might be added, but these, with those furnished by my brother GOLDTHWAITE, I think very satisfactorily sustain the judgment of the circuit court.