## EWING *vs.* STANDEFER ET AL.

1. A bequest of slaves to one for life and to her "lawful begotten heirs, to be equally divided among them at her death," uncontroled by any other clause in the will, vests the absolute property in the first taker.

ERROR to the Circuit Court of Madison. Tried before the Hon. Thos. A. Walker.

CLAY & CLAY, for the plaintiff in error.

ROBINSON, for the defendants.

CHILTON, J.—This was an action of detinue, brought by the defendants in error against the plaintiff to recover five several negro slaves. They claimed as the children of Lydia Standefer and grand-children of John Echols, deceased, under the will of the latter, which bequeathed the said property as follows: "I lend to my daughter Lydia Standefer, during her natural life, five negroes, viz: Harrena, &c., these five negroes, with all their increase, I will to the-lawful begotten heirs of Lydia Standefer, to be equally divided among them at her death." The plaintiff in error claims as a purchaser, deriving title from Skelton Standefer, the husband of Lydia, through intervening purchasers.

Lydia has since departed this life, and the defendants insist that their right to the slaves became perfect upon her decease.

The Circuit Court ruled that the sale made by the husband, into whose possession the slaves went, pending the life of the wife, did not bar the right of the defendants in error to recover. The correctness of this charge depends upon the construction to be given to the clause of the will above refered to. What estate did the husband of Lydia take under the will? It is clear that the testator intended to confer upon his daughter a life estate only in the slaves. This is expressly given. We lay no stress upon the word *lend*, but consider it in the connection in which it occurs, as synonymous with give or bequeath. This intention we must carry out, if it be consistent with the rules of law. The remainder, after the life estate, he gives to the "lawful begotten heirs of Lydia, to be equally divided between them at her death." Further, to simplify the sentence, we may read it as though the words, "lawful begotten" were omitted, as this is implied in the term heir simply—an heir being *ex justis nuptiis procreatus.*—2 Powell on Dev. 424.

There is no other expression in the will to aid us in construing this clause, and to explain the term heirs. How is it to be understood? As a word of limitation, or of purchase? The rule in Shelly's case, which in this State has been held to apply, as well to personal, as to real estate, (Price v. Price, 5 Ala. 580,) settles "that when the ancestor by any gift or conveyance, taketh an estate of freehold, and in the same gift or conveyance an estate is limited, either mediately or immediately, to his heirs, in fee or in tail, *the heirs* are words of limitation of the estate, and not words of purchase."—1 Coke, 104. The effect of the rule, in cases to which it applies, is to merge the remainder in the particular estate, thereby enlarging it into an estate in fee or in tail, so that the heirs generally, or heirs of the body, may take not under the gift or conveyance as purchasers, but by descent from the ancestor. The word heirs, or heirs of the body, when unexplained, are uniformly regarded as words of limitation, descriptive of the line of heirs to take, and not of particular individuals. In the case before us, we cannot perceive how the word *heirs* can receive any other than its technical construction. It is clear that it cannot be limited to children of the first taker, for it would equally embrace grand-children,

or great grand-children, and if there were at the time of the death of Lydia no lineal descendants, her next of kin would come to the succession. The gift then is to any and every one, who, at the time of the death of Lydia Standefer, should be her heir or heirs. If they cannot inherit *as heirs*, they are not the class spoken of in the will to take at her death. Thus it is manifest the testator designed the remainder-men, whoever they might be, should take both as heirs of the first taker, and also, independently of the first taker, immediately under the will from him. The line of descent must be traced to ascertain who are the heirs of Lydia, or were at the time of her death; having found them, had the limitation over been of real estate which remained undisposed of by the tenant for life, the question would come up, shall they take as heirs of Lydia or as devisees under the will. They cannot take in both capacities. But they *can take as heirs*, and the rule is, that when they can take *as heirs*, they cannot as purchasers.—Jones v. Morgan, 1 Bro C. C. 220; Price v. Price, *supra.* Judge Kent, speaking of the rule, says, "an estate of freehold in the ancestor attracted to him the estate imported by the limitation to his heirs; and it was deemed a fraud upon the feudal fruits and incidents of wardship, marriage and relief, to give the property to the ancestor for his life only, and yet extend the enjoyment of it to his heirs, so as to enable them to take as purchasers, in the same manner and to the same extent precisely as if they took by hereditary succession. The policy of the law would not permit this, and it accordingly gave the whole estate to the ancestor, so as to make it descendable from him in the regular line of descent."—4 Kent's Com. 217 marg. page.

In this case, the term heirs comprehends the whole class of heirs, and they would become entitled on the death of Lydia Standefer, the first taker, (supposing the subject of the bequest to be land,) in the same manner and to the same extent, and with the same descendable qualities, as if the devise had been to her and her heirs without the addition of other words. The law confers the right to an equal participation in the property in all the heirs—the will, which provides for the distribution, does no more.—4 Kent 222. In such case the word heirs is a word of limitation, and the intention will not control the effect of the word. To make it a word of purchase, it must be used as a

designation of the person of one or more individuals who are to take, or it must be so explained by super-added words, as will vary its legal technical effect or operation. That they are to take at the death of Lydia, when the division is to be made, only shows that the limitation over is not too remote.

Mr. Lewis in his work on the law of perpetuity, (page 384,) says, "as an ordinary rule it may be laid down, that the words "issue" and "heirs of the body," (which are generally and primarily regarded as synonymous, though the latter expression is more strict and technical,) are words of limitation, i. e., do not carry the legacy to the person, answering that description, *as purchaser,* after the decease of the ancestor taking a prior life interest, but describe and regulate the *quantum* of interest to be taken by such ancestor, and this construction is not varied by the circumstance of words of division or distribution being super-added to the gift to the issue, nor will that of a gift over, in default of issue, afford a sufficient reason for construing the word "issue" otherwise, than as a word of limitation."—Citing Doe v. Apling, 4 Term Rep. 82; Doe v. Cooper, 1 East, 229; Tate v. Clarke, 4 Beav. 100; which he thinks equally applicable to devises of land and bequests of personal property—note *w.* It appears, however, to me, that the word "issue," used in the creation of the limitation over, would indicate much more strongly the intention of the donor that the remaindermen should take as purchasers, than the use of the words, "lawfully begotten heirs." In Woodley v. Findley, 9 Ala. 716-19, the words were, "I lend to Mary Foster one negro girl, &c., during her natural life, and at her death, I give and bequeath said negro girl and her increase *to the lawful issue* of her body that may then be living, to them and each of them, share and share alike, their heirs and assigns forever; but should the said Mary die without lawful issue, then to go to her sisters, share and share alike." It was held that the words, "issue of her body," as used in this will, should be construed as words of purchase, and the first taker having died without issue, the limitation over to her sisters was good as an executory devise. We are satisfied with that decision as a correct exposition of the law applicable to that case. The distinction is there taken between the terms *issue* and *heirs.* The first might well be considered as synonymous with *children,* whereas, the latter requires to be restricted

by some words showing that it is not used in its primary sense. I am aware that the courts indulge much more latitude of construction in wills, so as to effectuate the supposed intention of the testator, than is done in construing deeds, but it seems to me, that unless we at once depart from the rule in Shelly's case, and hold that it is inapplicable to devises, we are compelled to apply it to the case before us. Here, the testator shows an intention to part with the entire interest in the slaves. He makes no disposition of them in the event of Lydia's dying without issue or heirs of her body. He does not even say that the persons to take must be the issue or heirs of her body, but as we have before said, if they are her "lawfully begotten heirs," they fill the description—a description, embracing not only her children, or grand children, if the children be dead, but in the absence of lineal descendants, her brothers and sisters, &c., who would succeed to her estate.

In Machen v. Machen, 15 Ala. 373, we had occasion to examine pretty much the same proposition now before us. There the will read as follows: "I leave to Jane Machen two negroes, Tamer and Prince, during her natural life; then to her bodily heirs. If there should be no heirs," then over, &c. We held, that there being no words used in the will, to show that the term "bodily heirs," was synonymous with children, that the rule in Shelly's case applied, and enlarged or converted the estate for life into an absolute estate in the first taker. In Lenoir v. Raney, 15 Ala. 667, the property was conveyed in trust for the use of C., during her natural life, and after her death, said slave to be the joint property of the heirs of the body, &c. Held that C. took the absolute estate. See the cases collected, refering to limitations of this nature, in note 2, to Bale v. Coleman, 1 Perre Williams, 142, (Amer. ed.;) 4 Brown's Ch. Rep. (Perkins ed.,) note 1, to Jacobs et al. v. Amyatt et al., p. 406, marg. p. 542; Doe v. Aplin, 4 D. & E., 82; Lyon v. Mitchell, 1 Maddock's Ch. Rep. 467-486.

In Dunn v. Davis, 12 Ala. 135, the bequest was "to my daughter Maria, for life, and at her death, to her *heirs or children*," held that the term *children* explained what the testator meant by *heirs*, and that no estate tail was created, and the children took vested remainders.—Goldthwaite, J., dissented. Had the word *children* in that case been omitted, there is no room to doubt

but that the decision of the majority of the court would have been different. The case then would not have differed essentially from the one before us. Under the rule in Shelly's case, had the subject of the devise in this case been land, an estate tail would have been created, but as it is personal property, the absolute title vests in the first taker, since the rule is well settled that words which create an estate tail in real estate, when applied to personalty, give the absolute property.—Fearne on Rem. 473; 2 Roper on Leg., 393, and cases cited in Durden, adm'r v. Burns, 6 Ala. 365; also, Machen v. Machen, and Lenoir v. Raney, *supra;* Williams on Ex'rs, 807; Lyon v. Mitchell, 1 Maddock, 475; Lewis on Law Perp., 405.

Having arrived at the conclusion that the absolute property in these slaves vested under the will in Lydia, which by virtue of the marriage vested immediately in her husband Skelton Standefer, upon his reducing the slaves into his possession, it follows that he had power to dispose of them, and having done so, the purchaser from him is entitled to hold them against the heirs of Lydia. The Circuit Court ruled the law otherwise. The judgment must, therefore, be reversed and the cause remanded. As the view we have taken of the case will, in all probability, be decisive of it, we deem it unnecessary to notice the other questions, presented by the record.

PARSONS, J., not sitting.