The State *v.* Merrick, Judge of the Seventh District Court.

The propriety of admitting to bail a prisoner accused of a capital crime, before conviction, is in all cases entrusted to the discretion of the judge empowered to issue the writ of *habeas corpus*. A *mandamus* will, therefore, not be granted to compel the District Court to admit a prisoner to bail. After the finding of a true bill of indictment for a capital offence, no inquiry can be made into the merits of the case upon *habeas corpus*, unless under circumstances of the most extraordinary character.

O N an application for a *mandamus*.

*Muse*, for the applicant :

In support of the application for a *mandamus* in the above entitled case, the court are referred to the following authorities, to wit: 1st. Martin's Reports, by Morgan, marginal page 217. 2d. Hale's Pleas of the Crown, pp. 148–129. Blackstone's Commentaries by Chitty, vol. 2, pp. marginal, 298–9. 7th An. *Longworth praying for a writ of habeas corpus*, pp. 247–8 -9. In this case, the court quotes the language of Chief Justice Marshall, as follows, to wit: "Chief Justice Marshall declared upon the trial of Colonel *Burr*, that the court had power to bail a person indicted for treason, according to its sound discretion."

Answer of *Merrick*, J., to the rule for a *mandamus* :

I hereby accept service of the petition and application for a *mandamus*, and consent, in the event that the reasons herein given are insufficient, that a peremptory *mandamus* issue without further notice.

It will be perceived that the writ of *habeas corpus* was returnable before me at chambers, and neither the indictment nor bench warrant were, in any manner, drawn in question. But it was contended on behalf of the accused, that he was not guilty of the crime charged in the indictment, and that he was entitled to be set at liberty upon giving bail.

On the trial of the *habeas corpus*, the prisoner placed on the stand the two witnesses named in the bill of exceptions, and (in effect, as I conceive,) offered to go behind the finding of the grand jury, and show that the offence was not murder, or, at least, that it was bailable. The District Attorney objected to the introduction of the testimony, and the court refused to receive it, among others, for the following reasons :

The Act of 1804 introduced the Common Law of England, so far as the intendment and construction of crimes, the indictment, the rules of proceeding, and the evidence in criminal cases are concerned.

In order to know what the law of Louisiana now is, reference should be had to the common law as it existed in England prior to 1804, rather than the same law as modified by recent English statutes.

On examination of English Common Law, as introduced into Louisiana, I find that the Court of King's Bench (*before bill found*) refused to admit to bail on *habeas corpus*, where the prosecutor, having identified the prisoner, eight credible witnesses proved an *alibi*. *Rex* v. *Greenwood*, 2 Strange, 1138.

In the case of *King* v. *Dalton*, the same court say, that there is a distinction between a finding by the coroner's inquest and an indictment by the grand jury ; that in one case they will examine the testimony, (which is all reduced to writing,) but, the testimony being secret in the other, it is not subject to examination. 2 Strange, 911.

In Bacon's Abridgment, Appendix, *verbo* Bail in Criminal Cases, D., I find that the Court of King's Bench will not bail after bill for murder found, though the facts were plainly manslaughter.—Case of *Kirke* and *Case* for the murder of *Conway*. The same principle is recognized in Chitty's Criminal Law, p. 129 of the margin, where he expressly says that a prisoner cannot be admitted to bail after the finding of a bill for murder. This principle is also recognized in the case of *The Territory* v. *Benoit*, 1 Martin, 142 ; and the case of *The Territory* v. *McFarlane*, 1 Martin, 216.

By Art. 104 of the Constitution, it is provided that all persons shall be bailable by sufficient sureties, unless for capital offences where the proof is evident or

the presumption great, or unless after conviction for any offence or crime punishable with death or imprisonment at hard labor.

This article evidently takes from the courts the power to admit to bail where the proof is evident, the presumption great, or there has been a conviction in a capital offence, or an offence punishable by hard labor. In the case referred to, (1 Martin, 143,) the finding of a grand jury has been held to be " too great a presumption of the defendant's guilt to bail him ;" and, if the case of *Benoit* is still law, the argument is conclusive.

Again, it was not pretended that the witnesses offered upon the stand were before the grand jury ; and, looking upon the indictment, it appears other witnesses were relied upon on the part of the State.

Now, suppose the witnesses were to be heard—suppose even that their testimony, *standing alone*, should leave no doubt that the prisoner was only guilty of manslaughter, or no offence at all—could the judge at chambers undertake to say that these witnesses are to be believed, and those before the grand jury to be discredited ? or that the grand jury has found erroneously?

If the court has this power, then these two consequences flow from it:

1st. The court has power at chambers to supervise the finding of the grand jury, a body through whose agency alone prosecutions for capital offences originate.

2d. Power to declare, before the trial by the petit jury, that the accused is not guilty, or not guilty of the higher grade of offence charged against him in the indictment ; and, in fine, to set the prisoner at liberty or to enable him to escape all penalty by forfeiting his recognizance for such minor offence as the judge may think the accused should be held to answer.

Not believing that I possessed these powers, I think it would be doing a vain thing to hear testimony which would, as against the finding of the grand jury, conclude nothing.

The evils which would flow from the introduction of the principle that the accused could compel a disclosure of what passed in the grand jury room, are also worthy of consideration.

If the court should deem these reasons insufficient, I consent that the *mandamus* should be peremptory at once,—reference, however, being had to the fact that it will not be in my power to hear the case again until after having held the courts, as required by law, in the Eighth Judicial District.

SPOFFORD, J. On the 7th of May, 1855, *James Bell* was imprisoned in the parish jail of East Feliciana, under a bench warrant, which recited that an indictment had been found against him for the crime of murder.

On the same day he applied to the District Judge for a writ of *habeas corpus*, alleging that he was entitled to his liberty, on giving bail, or to an entire discharge.

The writ was granted, and on the 9th of May came on for trial, when, it being conceded by counsel that the warrant upon which said *Bell* was detained in custody was in due form, the prisoner was remanded to custody to answer the charge of murder preferred by the grand jury against him, and until he should be discharged by due course of law.

Upon the trial of the *habeas corpus*, the following bill of exceptions was taken :

" Be it remembered, that on the trial of the writ of *habeas corpus* granted in the above case, the accused offered two witnesses, *Thomas J. Worsham* and *Beverly Howley* on the stand, to show that he was entitled to bail *under the facts and circumstances of the case prior to the finding of the indictment.* To which the District Attorney objected, on the ground that an indictment had been found by the grand jury against the accused for murder, which objection being sustained by the Court, and the evidence rejected, the accused by his counsel excepts," &c.

*By the Court.*—The counsel stated that it was conceded that the warrant was

in due form, but that, notwithstanding the finding of the grand jury, the court ought to hear the whole testimony, and admit to bail or not, as should appear from the testimony.

(Signed.)                    EDWIN T. MERRICK,
                    *Judge, Seventh District.*

The prisoner now asks this court for a writ of *mandamus*, ordering the District Judge to proceed to hear the evidence of the witness, and to admit him to bail or otherwise, according to the testimony.

The District Judge has waived the formality of a preliminary order, and sent up his answer to the application, consenting that a peremptory *mandamus* issue at once, if the reasons he assigns to the contrary are not deemed sufficient in law.

We observe in the outset, that, had the judge chosen to hear the proffered testimony, and thereupon had remanded the accused to prison, or admitted him to bail, or discharged him without delay, no appeal would lie to this court from either of such orders, as we would be without power to revise the acts of the judge in the exercise of the discretion confided to him. *Ex parte* Mitchell, 1 Ann. 413.

It is very doubtful whether we could employ the summary remedy of *mandamus* to review the discretion which has been exercised in the present case; for, let it be observed that the judge granted the *habeas corpus*, and examined into the commitment and its cause; that he found the *mittimus* formal and the cause sufficient, to wit: a true bill of indictment for murder, found by a grand jury of the parish and pending in his court; that this finding furnished, to his mind, so great a presumption that the prisoner was guilty of a capital offence, that he did not deem him bailable under the constitution and laws; and that the only complaint urged against the judge is, that being thus satisfied, he refused to hear two witnesses (whose names were not endorsed among the witnesses on the bill) to impeach the correctness of the finding.

Suppose he had heard the two witnesses. No matter what they had testified, under his views of the law, he would still have been bound, in conscience, to remand the prisoner out of respect to the finding of the grand jury under oath, upon other evidence adduced at their secret inquest. To compel him to listen to these witnesses would, then, be an idle ceremony, as we could not review his decision afterwards.

But, supposing the case to be properly before us, we are not prepared to overrule the opinion of the District Judge upon the law. That opinion has not been met by authorities or arguments at all equal to those in its favor.

Chitty says: "A man charged with murder by the verdict of a Coroner's inquest, may be admitted to bail if it appears *by the depositions* to amount only to manslaughter, *though not after the finding of an indictment by the Grand Jury ;* the reason for which distinction may be, that in the first case the court have the depositions to examine, whereas in the latter case the evidence is secret, and does not admit of a summary revision. It is, in fact, to the depositions *alone* that the court will look for their direction, for where a felony is positively charged they will refuse to bail though an *alibi* is supported by the strongest evidence. Nor will the court at all admit of extrinsic evidence. So, that they refused to examine whether a man brought up before them had been previously acquitted of a charge precisely the similar. And the court refused to bail a person for receiving stolen goods, the defendant's affidavit admitting

the receipt of the goods, but denying that he knew them to be stolen, because that was a fact triable only by a jury, and it would be of dangerous consequence to allow such proceedings, as it might induce prisoners generally to lay their case before the court, who, instead of the jury, would be called upon to try the truth of the fact for which they were committed." Chitty's Cr. Law, p. 129. See also Petersdorff on Bail., p. 521.

This doctrine of the English courts was adopted by the Superior Court of the Territory of Orleans. In the case of *The Territory* v. *Benoit*, reported in 1 Martin, 142, the Grand Jury had found an indictment against the defendant for an assault with intent to murder, and the defendant moved ·to be admitted to bail. The court replied: "It cannot be done. Bail is never allowed in offences punishable by death, when the proof is evident or the presumption great. On a Coroner's inquest finding a person guilty of a capital crime, the Judges have often looked into the testimony which the Coroner is bound to record, and when they have been of opinion that the jurors had drawn an illogical conclusion, admitted the party to bail. But as the evidence before the Grand Jury is not written and cannot be disclosed, the same discretion and control cannot be exercised, and the Judges cannot help considering the finding of the Grand Jury as too great a presumption of the defendant's guilt to bail him. We recollect no case in which it has been done. *C. J. Marshall*, who, on the examination of *Aaron Burr*, had admitted him to bail, concurred in the opinion of the court, that he was no longer entitled to that indulgence after the Grand Jury found a bill against him."

The rule laid down in this case was affirmed in the subsequent case of *The Territory* v. *McFarlane*, 1 M., 216, though with a remark that it would not be rigidly extended to cases in which the defendant had not the benefit of a trial, during the term, when the continuance was not granted at his solicitation.

In the present case, it will be remarked that the the prisoner had not been confined two days when the *habeas corpus* was tried, and it does not appear that the State has ever had an opportunity to bring him to trial.

In *ex parte* Taylor, 5 Cowen, 56, it was said by Sutherland, J., that "the indictment must be taken as conclusive upon the degree of the crime."

In the case of *The People* v. *McLeod*, 25 Wendell, 568, reported also in 1 Hill, 392, Cowen, J., remarked that " Nothing is better settled on English authority than that on *habeas corpus*, the examination as to guilt or innocence cannot, under any circumstances, extend beyond the depositions or proofs upon which the prisoner was committed." And in that case, it was held that the prisoner had not the right upon *habeas corpus* of going behind the indictment and proving that he was not guilty. Notwithstanding a statute of New York authorized a prisoner upon the return of the writ, " to deny any of the material facts set forth in the return, or to allege any fact to show either that his imprisonment or detention was unlawful, or that he was entitled to his discharge." See also *Hight* v. *United States*, 1 Morris, 407 ; *The State* v. *Drew*, 1 Taylor's (N. C.) R., 147.

In *The People* v. *Van Horn*, 8 Barb. Sup. Court R., 158, it was said that the general rule in cases of felony is that an indictment is to be deemed conclusive of the guilt of the accused, so as to prevent him from being enlarged upon giving bail, although there are several circumstances *arising after indictment* which may entitle the party to bail and thus constitute exceptions to the rule. And in *Archer's* case, 6 Grattan, 705, the court held that a prisoner indicted for

STATE
v.
MERRICK.

felony might be let out on bail where his continued confinement would endanger his life. See also *United States* v. *Jones*, 3 Wash. C. C. R., 224. So, where the trial of the indictment has been twice postponed without his assent or fault. *Ex parte* Stiff, 18 Ala., 464.

In *The State* v. *Hill*, 1 South Carolina Court Rep., 242, there was a motion to reverse the decision of the Justice of the Court of General Sessions and to liberate the prisoner upon bail. The Session Justice had refused to hear affidavits tending to show that the prosecution was instituted from malice or mistake, and, being under the impression that, after bill of indictment found in a capital case, he had no power to hear evidence to contradict the finding on an application for bail.

The motion was discharged, Justices Nott and Grimke being of opinion that, as the matter was confided to the discretion of the Judge, the constitutional court should not interfere, although they thought he might have heard the evidence and admitted the party to bail had he chosen. Justice Smith being of opinion that the Judge below was right in refusing to listen to the evidence, and Justices Brevard and Colcock being of the opposite opinion.

In *The Commonwealth* v. *Rutherford*, 5 Randolph, 647, the General Court of Virginia said that on a petition from one in confinement under the judgment of an examining court, the Judge may hear testimony other than the depositions taken on the prisoner's examination, and that even an indictment by the Grand Jury would not necessarily exclude other evidence on the question of bail. This opinion was based mainly upon the peculiar provisions of a statute of Virginia.

Upon a review of the authorities, we conclude that, although the propriety of admitting to bail prisoners accused of crime before conviction, seems to have been, in all cases, entrusted to the sound discretion of Judges empowered to issue the writs of *habeas corpus*, yet the fact that the Grand Jury have found a true bill of indictment for a capital offence, has generally been considered as affording a sufficiently strong presumption of the prisoner's guilt to preclude any further inquiry into the merits of the case upon *habeas corpus*; that no such inquiry has ever been permitted, except upon the suggestion of circumstances of the most special and extraordinary character; and that we will not interfere to compel a District Judge to listen to evidence offered, as in the present case, for the purpose of showing that, under the facts prior to the indictment, the prisoner is entitled to bail, but, on the contrary, we express our unanimous approval of the course pursued in this instance by the Judge who rejected the evidence.

The petition for a *mandamus* is therefore dismissed at the costs of the applicant.