Lloyd v. Rambo.

---

## LLOYD *vs.* RAMBO.

[BILL QUIA TIMET BY REMAINDER-MEN AGAINST PURCHASER FROM LIFE-TENANT.]

1. *Construction of bequest to one for life, and "at her death to her lawful heirs of her body."*—A bequest in these words, "I loan to my sister Penny" (then a

married woman) three slaves and one-third of a tract of land, "and at her death I give the above property *to her lawful heirs of her body,*" vests in the first taker the absolute property in the slaves.

2. *General rule of construction, as to words used more than once in will.*—It is a general rule in the construction of wills, that when a word is used more than once, it is to receive the same construction in each case; but an established exception to this rule is, that a word having a technical legal meaning, when accompanied in one clause by a context which shows an intention that it should be understood in a different sense, and used in another distinct clause, in reference to a · different subject, without such explanatory context, must receive in the latter clause its technical meaning.

APPEAL from the Chancery Court of Lowndes.

Heard before the Hon. WADE KEYES.

THE bill in this case was filed by the appellants, who are the children of Mrs. Penelope (or Penny) Lloyd, and sought to protect their alleged interests as remainder-men in certain slaves, which were bequeathed to Mrs. Lloyd by her brother, Redding Simms, and were afterwards purchased by the defendant, Lawrence Rambo, at sheriff's sale under execution against Mrs. Lloyd's husband. The will of Redding Simms, which was executed in North Carolina, in November, 1823, (and which was made an exhibit to the bill,) contained the following clauses : "*Item First :* I give and bequeath to my brother Burrell Simms four dollars of my estate for his part. *Item Second :* I loan to my beloved mother, Martha Simms, one negro woman, during her natural life, by the name of Sally, and at her death I give her to Joel Simms' lawful heirs. *Item Third :* I loan to my brother Joel Simms, during his natural life, four negroes, viz., Cherry, Gilbert, Emeline, and Maria ; and at his death I give them to my nephew Redding Simms, son of said Joel Simms. I also give to Joel Simms one-third part of all my lands, lying in Anson county and State aforesaid, to his own proper use. *Item Fourth :* I give and bequeath to my sister Rhody Simms one hundred dollars of my estate, to her own proper use. *Item Fifth :* I give and bequeath to my sister Sally Garrott, wife of Isham Garrott, of Anson county, one negro man by the name of Jim, also one-third part of my lands lying in Anson county, to her own proper use. *Item Sixth :* I loan to my sister Penny Lloyd, of South Carolina, three

*negroes, viz., Patience, Eliza, and Grissy, also one-third part
of all my lands lying in Anson county; and at her death I
give the above property to her lawful heirs of her body. Item
Seventh:* I give to my brother John Simms the rising
profits of two negroes, viz., Sam and Jeph, to be sold in
Wake county, North Carolina, by my executors, on twelve
months credit, also two hundred and fifty dollars in cash,
all to his own proper use. *Item Eighth :* I give and bequeath
to my sister Winiford Thompson, wife of Nathaniel
Thompson, of Wake county, North Carolina, the follow-
ing property, viz., two negroes, by the names of Sandy
and Sampy, to her own proper use. *Item Ninth :* I loan
to my sister Patsy Rigsby, wife of Edward Rigsby, one
negro girl, by the name of Tilda; and at her death I give
her and her increase to the lawful heirs of her body. *Item
Tenth :* I give to my brother Berry D. Simms two negroes,
by the names of Solomon and Peter, both men, also six
hundred and forty acres of land in the county of Wake,
and on the waters of White-Oak creek. *Item Eleventh :*
I give to my niece Gilly Simms, daughter of Joel Simms,
one negro girl, by the name of Camlis, to her own proper
use.    The balance of my property, consisting of stock of
horses, cattle, hogs, and sheep, with my household and
kitchen furniture, plantation utensils, crop of corn, fodder,
wheat, and cotton, I leave with my executors; out of
which my just debts are to be paid, and the residue (if
any) I give to Joel Simms' lawful heirs,—one mule ex-
cepted, by the name of Jack, which I give to Berry D.
Simms."

The chancellor dismissed the bill, for want of equity,
and his decree is here assigned as error.

R. M. WILLIAMSON, for appellants.

J. F. CLEMENTS, *contra.*

A. J. WALKER, C. J.—That the sixth clause of the
will of Redding Simms, standing alone, would, by virtue
of the rule in Shelley's case, have created an estate tail,
if the subject of the bequest had been land; and that the
subject-matter being personalty, it vests the first taker

with the absolute property, are propositions well sustained by the decisions of this court, and the reasoning and authorities adduced in those decisions. We therefore assert those propositions, on the authority of the cases cited below.—Ewing v. Standifer, 18 Ala. 400; Machen v. Machen, 15 Ala. 373; Hamner v. Smith, 22 Ala. 433; Lenoir v. Rainey, 15 Ala. 667; Dunn v. Davis, 12 Ala. 135, (which, it is said in Ewing v. Standifer, would have been decided differently, if the word children had been omitted;) Darden v. Burns, 7 Ala. 363.

None of our decisions will justify the conclusion, that any thing contained the sixth clause of the will so qualifies [the words "lawful heirs of her body," as to make them words of purchase.—McVay v. Ijams, 27 Ala. 238; Flinn v. Davis, 18 Ala. 122; Powell v. Glenn, 21 Ala. 468; Williams v. Graves, 17 Ala. 62; Doyle v. Bouler, 7 Ala. 246; Bell v. Hogan, 1 St. 536.

[2.] The word *heirs* occurs in a clause preceding, and in one succeeding the sixth; and it is argued, that the words in those clauses must mean children, and that the testator must be supposed to have used the word in the same sense in the sixth clause. It is a general, but not a universal rule, that the same word is to be understood in the same sense, when it occurs more than once in the same will. A well-established exception to the rule is, that if a word has a technical meaning in the law, and is accompanied by a context, in one clause, which shows the intention of the testator that it should be understood in a different sense, while in another clause it is used in reference to a different subject, being accompanied by nothing explanatory of it, the word is to receive in the latter clause its technical meaning.—Flinn v. Davis, *supra;* Carter v. Bentall, 2 Beavan, 522; Doe *d.* Cadogan v. Ewart, 7 Ad. & El. 636; Stratford v. Buckley, 2 Vesey, sr., 170–181; Doe *d.* Chattaway v. Smith, 5 M. & S. 126–131; Sheffield v. Orrery, 3 Atk. 282–288; Forth v. Chapman, 1 P. Williams, 664; 2 Williams on Ex. 928; 2 Lomax on Ex. (marg.) 76; Mazyck v. Vanderhorst, 1 Bailey's Eq. 48; 2 Jar. on Wills, 419. It is not an unreasonable inference, that the omission of a qualification in one clause

is the result of a design to leave the word in that instance to its technical meaning. This case falls precisely within the exception.

Decree affirmed.