# Holt v. Pickett.

*Bill in Equity to Enjoin Action of Ejectment.*

1. *Wills; construction of devise; nature of estate.*—A devise, "I lend to my daughter S., during her natural life, and at her decease to be equally divided between the heirs of her body the following land,"&c., creates a freehold estate for life in S.; the word "lend" as used in the devise being equivalent to "give," "bequeath" or "devise."

2. *Same; same; application of rule in Shelley's case.*—The superaddition in a devise of a provision for equal division, or other words of distributive modification, inconsistent with the course of descent of an estate tail at common law, does not change "heirs of the body" as used in such devise, into words of purchase, so as to prevent the application of the rule in Shelley's case.

3. *Same; same; same.*—In a devise, "I lend to my daughter S. during her natural life, and at her decease to be equally divided among the heirs of her body, the following land," &c., the superaddition of the words "to be equally divided," does not change "heirs of her body," as used the devise, into words of purchase so as to prevent the operation of the rule in Shelley's case; and by such devise, under the influence of the rule in Shelley's case, a fee simple title vested in the daughter S.

4. *Bill to enjoin ejectment; without equity when shows a good defense to suit.*—When a bill in equity is filed to enjoin an action of ejectment brought by the parties defendant, and the averments of the bill show that the complainant has a complete defense to the ejectment suit, the bill is without equity, and should be dismissed.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. JERE N. WILLIAMS.

The bill in this case was filed by the appellant, Barrie L. Holt, against the appellee, on February 9, 1895. The bill avers that William Harris, a resident of said county and State, died in October, 1825, seized and possessed of the real estate described in the original bill, leaving a will, which was probated and recorded in the office of

the probate judge of said county in October, 1825. Item six
of said will is as follows : "I lend to my daughter Sarah,
during her natural life, and at her decease to be equally
divided between the heirs of her body, the following
land :   Section 29, township 17, range 18, in Montgom-
ery county, Alabama." William Harris left surviving
him a son, and the said Sarah, who intermarried with
one A. J. Pickett.   The bill further avers that said A. J.
Pickett died intestate in said county and State, in 1858,
and during the same year W. R. Pickett, his son, was
duly appointed administrator of his estate by said pro-
bate court.   Said A. J. Pickett left unpaid debts and
said W. R. Pickett, as said administrator, took possession
of his estate, including the real estate above described.
On July 6, 1860, said W. R. Pickett filed his petition in
the probate court of said county, praying for an order to
sell said lands as the property of said A. J. Pickett, de-
ceased, for distribution among the heirs and distributees
of said A. J. Pickett, deceased, to which proceeding re-
spondents and other heirs of said A. J. Pickett, deceas-
ed, were made parties; each of said parties were cited to
appear at the hearing and were properly and legally rep-
resented thereat.   A guardian *ad litem* was appointed to
represent the interest of the minors at such hearing, who
was present and represented the interest of said minors.
In 1865, said court ordered that said administrator sell
said lands for the purposes prayed.   At said sale Olive
S. Holt purchased lots 10, 11 and 12 of Pickett's tract,
which were situated in said section, township and range,
and paid the purchase money therefor.   Samuel G. Reid
purchased lot 45 of said tract, which is situated in said
section, township and range, complied with the terms of
sale and paid the purchase money therefor.   Said ad-
ministrator reported the sale of said lands, which report
was duly and legally confirmed.   Subsequently, upon
the report by said administrator of the compliance with
the terms of said order by said Olive S. Holt and Sam-
uel G. Reid, the court ordered said administrator to exe-
cute deeds conveying to said Olive S. Holt and Samuel
G. Reid, respectively, the lots sold to them, which was
accordingly done. Each of said purchasers went immedi-
ately into the possession of the said lands purchased by
them   Complainant became the purchaser of said lots,
of which he and those under whom he holds, have been

[Holt v. Pickett.]

in possession openly, notoriously, adversely and contin-
uously for more than twenty years, claiming it as their
own. It was further averred in said bill that said Sarah
Pickett died intestate in the said county of Montgomery,
in July, 1894, never having asserted any claim to said
land since the death of her husband, except as his widow.
Said W. R. Pickett, as said administrator, received the
purchase money of said land and distributed it to the
widow and heirs of said A. J. Pickett, deceased, who
knew at the time of its receipt that it was the proceeds
of the sale of said land. They accepted the same, enjoy-
ed the use thereof and have never offered to refund it.
Notwithstanding this, the parties defendant to this bill,
on December 11, 1894, instituted a suit in ejectment
against Barrie L. Holt, in the circuit court of Montgomery
county, to recover possession of said lots, claiming that
their mother, said Sarah, had only a life estate therein,
and that after her death it descended to them. It is further
averred in said bill that each of the plaintiffs in said suit
were heirs of said A. J. Pickett, deceased, and had re-
ceived their *pro rata* share of the proceeds of the sale of
said land from the administrator and used it, yet
they claimed to be the owner of said lands.
Complainant averred that the claim of said
plaintiffs in the ejectment suit is a cloud upon his title
and averred that without the intervention of said chan-
cery court, said plaintiffs (appellees) will press their
suit, although in equity and good conscience they have
no right or claim.

The prayer is for process and for an injunction to re-
strain respondents from further prosecuting the said suit
against complainant, in said circuit court of Montgom-
ery, and upon a final hearing to decree that said respond-
ents be forever restrained from interfering with com-
plainants possession of said land, and for such other and
further relief as might be proper in the premises.

The defendants demurred to the bill upon the following
grounds :

1. Under the allegations of the bill, complainant has
a full, adequate and complete remedy at law, and there
is no necessity for invoking the aid of a chancery court.

2. The bill fails to show fully the will of William
Harris, or what other provisions there might have been
therein relating to said land.

[Holt v. Pickett.]

3.   Because said bill fails to aver that Stephen Harris was ever in possession of said land, or what claim he asserted thereto.·

4.   The bill fails to show any other title in complainant than that acquired by adverse holding, which could have been asserted in the court of law as well as in equity.

The respondents also filed a sworn answer denying all the equities of the bill, and then moved the court to dismiss the bill for the want of equity therein, and also made a motion to dissolve the injunction upon the sworn answer.

On the submission of the cause, the chancellor rendered a decree sustaining the first and fourth grounds of the demurrer, and also decreed ''that the injunction be dissolved by reason of the denials of the answer to the bill,'' and that the motion to dismiss the bill for the want of equity be overruled. From this decree the complainant appeals, and assigns the same as error.

GRAHAM & STEINER, for appellant.—1. The complainant was entitled to the relief prayed for, and the chancellor erred in dissolving the injunction upon the denial of the answer.—High on Injunctions, §§ 1470, 1513, 1514; *Jones v. Woodstock*, 95 Ala. 551.

2.   If it be true that the rule in Shelley's case, which was the law in Alabama at the time of the probate of the will of William Harris, applies here, then appellant did have an adequate remedy at law, and Mrs. Sarah Pickett had a fee simple title to this land.—*Price v. Price*, 5 Ala. 278; *Machen v. Machen*, 15 Ala. 375; *Hamner v. Smith*, 22 Ala. 433; *May v. Ritchie*, 65 Ala. 602; *Lenoir v. Ranier*, 15 Ala. 667; *Martin v. McRee*, 30 Ala. 116; *McQueen v. Logan*, 80 Ala. 304; 22 Amer. & Eng. Encyc. of Law, 512 *et seq*.

DAVID T. BLAKEY and TOMPKINS & TROY, *contra*.—1. It is clear that the testator intended by the clause of his will in which he devised the land to his daughter Sarah, that she should have only a life estate in said land. In arriving at the intention of the testator, cases which have held that these words created an estate tail must be considered ''as intended simply as a declaration of the legal effect and operation of the words and terms then under-

[Holt v. Pickett.]

consideration, when employed in conveyances of land generally, unrestricted or unexplained by other parts of the instrument."—*Sullivan v. McLaughlin*, 99 Ala. 66. Thus in the following cases, the words "heirs of the body" were held not to create an estate tail because restricted or explained by other parts of the instrument.— *Robinson v. LeGrand*, 65 Ala. 112, *May v. Rushton*, 65 Ala. 604; *Slayton v. Blount*; 93 Ala. 575; *Sullivan v. McLaughlin*, 99 Ala. 65; *Roberts v. Ogbourne*, 37 Ala. 179.

The reason of the rule in Shelley's Case was that where a conveyance is made to a person for life with remainder to his heirs or the heirs of his body, the course of descent was the same as if the conveyance had been made to such person and his heirs, or the heirs of his body, creating a fee simple in the first instance, and a fee tail in the second. Hence it has been conceded, that superadded words of limitation varying the course of descent operate to make the words "heir" or "heirs of the body" words of purchase, and not words of limitation.— *Tanner v. Livingston*, 12 Wend. 83; *Self v. Tune*, 6 Munford (Va.) 470; Bingham on Descents, 233; *Robinson v. LeGrand*, 65 Ala. 112.

The superadded words "at her death to be equally divided" among the heirs of her body, changed the course of descent from what it would have been had the conveyance been to her and the heirs of her body, and an estate tail created; and hence the words heirs of her body were used as words of purchase and not as words of limitation by the testator, William Harris, in his will.—*Smith v. Greer*, 88 Ala. 416; 2 Washburn on Real Property, 559.

HEAD, J.—The view we take of this case renders it necessary to decide only a single controverted question, and that is, whether the rule in Shelley's case is applicable to the devise contained in item six of the will of William Harris, which became operative in 1825, when that rule was of force in this State. The devise in question is in the following language: "I lend to my daughter Sarah during her natural life and at her decease to be equally divided between the heirs of her body, the following land: section 29, township 17, range 18, in Montgomery county, Alabama." Two reasons are urged, in argument, by counsel for the appellees, why the rule

should not be applied :    *First*, it is said that the use  of
the word *lend* shows an intention not to create an  estate
of freehold in the first taken ; and *second*, the superaddi-
tion of the words ''to be equally  divided between'' pre-
ceding the phrase, ''the heirs of her body,'' divert these
words from their technical  meaning  and  show, either
that they should be construed as if ''children'' had been
designated, or that the persons, who might be  heirs of
her body at her death, were to take, not from  the ances-
tor, but from the testator, as a  new  stock  of  descent.
We will dispose  of  these contentions in the  ʊrder  in
which we have stated them.

1.    The supposed  significance cannot be  attached to
the use of the word *lend*.   It means  nothing more nor
less than *give, bequeath* or *devise*, as we have heretofore
held.— *Woodley v. Findlay*, 9  Ala  716 ; *Ewing v.  Stande-
fer*, 18 Ala. 400.   In *Lloyd v. Rambo*, 35 Ala. 709, the
synonymous word, ''loan'' was employed, with  like re-
sult.   Upon the authority of these  cases, we must con-
clude that, by the terms of  the  will, an estate for life,
which is an estate of freehold, was limited to the ancestor
and thus the first requirement of the rule satisfied.

2.    It is said by counsel  for appellees, who  argue
against the application of  the rule  in Shelley's case to
this devise, that ''there are cases in which it is held that
the words, *equally  divided*, superadded, do not  prevent
the operation of the rule in Shelley's case, but such cases
are where the limitation was to *the heirs* and not *the
heirs of the body*.''   Counsel do not cite the cases which
are supposed to  justify this distinction and we  have
been unable to find any authority for it in  the decisions
of this court.   On  the contrary, we  find the law to be
well settled in Alabama, in other  American States, and
in England, that the superaddition of  a provision for
equal division or other words of  distributive modifica-
tion, inconsistent with the course of descent of an estate
tail, at the common law, will  not change *heirs of the
body* into words of  purchase, and hence  will not prevent
the application of the rule in Shelley's case.   The text
writers of recognized authority state the law in the same
way.   Thus, Mr. Washburn says :  ''When  an estate is
limited to A for life, and  after his death to the heirs of
his body to share as tenants in common or to be equally
divided between them, then it comes  within the rule.''

[Holt v. Pickett.]

2 Washburn Real Prop. (4th ed), 602. Mr. Jarman in his work on wills, after reviewing the English cases, including the great case of *Jesson v. Wright*, 2 Bligh 1, says: "The preceding cases present many shades of difference, but they *all* concur in establishing the principle, that words of inconsistent modification engrafted on a limitation to heirs of the body are to be rejected. It follows, then, that every decision not strictly reconcilable with this principle may be regarded ·as overruled by them."—2 Jarman Wills, p. 372. In this country, where the rule of primogeniture does not prevail, the provision for equal distribution or division is not rejected as impossible or repugnant, but it is held insufficient to convert heirs, or heirs of the body into words of purchase, because the superadded words accomplish no more than the law would direct without them.—*Ewing v. Standefer*, 18 Ala. 400 ; *Moore v. Brooks*, (Va.) 12 Grattan, 135, overruling the earlier case of *Self v. Tune*, 6 Munf. 470 ; *Williams v. Foster*, 3 Hill (S. C.) 193 ; *Clarke v. Smith*, 49 Md. 106.

In *Ewing v. Standefer, supra*, the bequest was as follows : "I lend to my daughter Lydia Standefer during her natural 'life, five negroes, viz, Harrance, &c., these five negroes with all their increase, I will to the lawful begotten heirs of Lydia Standefer, to be equally divided among them at her death." It will be observed the limitation was to "the lawful begotten heirs" but these words are construed to mean "heirs of the body."—*Good v. Good*, 7 Ell. & Bl. 295 ; *Pratt v. Flamer*, (Md.) 5 H. & J. 10 ; *Clarke v. Smith*, 49 Md. 106; 2 Jarm. Wills, 325. This court expressly decided, that under the influence of the rule in Shelley's case, the absolute property vested in the first taker. The decision was called in question by the counsel who appeared for the appellee, in the subsequent case of *Hamner v. Smith*, 22 Ala. 433, but the prior ruling was reaffirmed. These cases have stood unshaken to this day. The principle they announce is a rule of property in this State, and we could not disturb them, even if convinced they were erroneously decided. We do not, however, doubt their correctness. The authorities upon which they were based abundantly sustain them, and they are in accord with the general run of decisions in the American courts, some of which we have already cited. To those above

noted, we add the following ; *Watts v. Clardy*, 2 Fl. 369 ; *Ross v. Toms*, 4 Dev. L. 376 ; *Curtis v. Longstreth*, 44 Pa. St. 202 ; *Crockett v. Robinson*, 46 N. H. 454 ; *Cooper v. Cooper*, 6 R. I. 261 ; *Brant v. Gelston*, 2 Johns. Cas. 384 ; *Kingsland v. Yapelye*, Edw. Ch. 1 ; *Kennedy v. Kennedy*, 5 Dutcher, 185.

3.   By the terms of the will of William Harris, an estate tail, at the common law, would have been  created in his daughter Sarah, and that estate  our statute converted into a fee ˙simple.   Her title, however, was lost prior to her death, by the adverse possession of the complainant and those under whom he  claims and no interest descended to  her  children.   As they  were not purchasers under their grandfather's  will  and  as they acquired no estate in the  land  in  controversy  by descent from their mother, they had no title  upon which  to  recover  in  the action of ejectment.   To  that  action, the bill of complaint shows he   has  a  perfect  defense, available in the court of law  and  the  bill is, therefore, devoid of equity.   The first  ground of  demurrer was well taken and the  injunction was  properly dissolved. It is of no consequence that the chancellor rested his dissolution upon the denials of the answer.

Let the decree from  which the  appeal is taken, be in all things affirmed.