## POWELL *vs.* GLENN ET AL.

1. If personal property be given, by words that would create an estate tail at common law, if the subject of the gift were land, the remainder over is void, and the first taker takes the whole.

2. Although the words "heirs of the body" ordinarily create an estate tail, yet they may be restricted and explained by other expressions; and if, from such expressions, the testator's intention appears to have been, that the estate of the first taker should cease with his life, and the property should then vest in his children, or, in default of children at the time of his death, then over to another, the remainder is good, and the words will be construed as words of purchase and not of limitation.

3. Where a testator, by one clause of his will, bequeathed certain slaves to each of his daughters, and to the heirs of her body begotten, and, by another clause, declared his intention to be as follows: "That the negroes willed and devised to my two daughters as above, are for their support and maintenance, and to the support and maintenance of the heirs of their bodies begotten, or to be begotten, and to descend directly after their death to the heirs of their bodies begotten. If either of my daughters above named should die without an heir of their body begotten, then, and in that case, the property so willed to them, or to the one that may so die without an heir, shall pass off, and be_ come the property of my surviving daughter and my two sons, or their heirs; each one to have a share alike in the property so willed to the one so dying without heirs." It was held:

   That the words "heirs of the body," as used in this will, were synonymous with "children," and that the remainder over was good. (Re-affirming Graves v. Williams, 17 Ala. 62.)

4. When the legal title to slaves bequeathed is vested by the will in the executors, as trustees, the title of the trustees will not be continued beyond the time contemplated by the will for its determination.

5. Where a feme sole, one of several co-plaintiffs, marries, pending the suit, and her husband is not made a party, the objection, if it can avail in any case, must be taken by plea in abatement.

6. When one of several co-plaintiffs in an action of trover dies, pending the suit, and his personal representative is not made a party, the objection can only avail to reduce the amount of the recovery; and if no question is raised in the primary court touching the *quantum* of damages, the objection cannot be raised in the Appellate Court.

ERROR to the Circuit Court of Sumter.

Tried before the Hon. TURNER REAVIS.

This was an action of TROVER, brought by the defendants in error against the plaintiff, for the conversion of a slave, which the plaintiffs claimed under the will of their grandfather, Robert Graves. The clauses of the will bearing on the questions involved, will be found in the opinion of the court. The plaintiffs introduced the will, and then proved that they were the children of Sarah Glenn, one of the testator's daughters, who departed this life before the defendant acquired possession of said negro, and that the negro sued for was one of those bequeathed by the will.

The defendant then showed, that the negro was in the possession of said Sarah Glenn and her husband, under the will, up to the time of her death, which occurred before the defendant purchased; that after her death, the negro remained in the possession of her husband, and, while remaining in his possession, was levied on by virtue of an execution against him, and was sold, under said execution, to pay his debts; at which sale the defendant became the purchaser. The defendant further proved, that the testator's daughter, Mary Ann, mentioned in the fourth clause of said will, was alive, between sixty and seventy years of age, had never had a child, and was, in the opinion of a medical witness, past the age of child-bearing.

The court charged the jury, that, under the will of said testator, the plaintiffs, as the children of said Sarah Glenn, were entitled to recover; to which charge defendant excepted.

The record also shows, that, pending the suit, two of the plaintiffs died, and on motion it was ordered that the suit abate as to them; also, that Sarah G. Glenn, one of the plaintiffs, had married during the pendency of the suit, and on her marriage being suggested to the court, a *scire facias* was issued against her husband, which was returned executed; but no other steps were taken to make him a party to the suit.

The errors assigned are:

1. In rendering judgment against the plaintiff in error, without first requiring the legal representatives of those plaintiffs who had died pending the suit to be brought before the court, and without such parties;

2. In rendering judgment, without the husband of Sarah G. Glenn being a party in court;

3. In the charge given.

HUNTINGTON, for plaintiff in error, submitted a written argument, from which the following brief is condensed:

By the terms of the will, the heirs of the daughters are to take by inheritance; the negroes devised to the daughters are to "descend," directly after their death, to the heirs of their bodies begotten. The word "surviving," which has been held to have the force of determining, in certain cases,

that a definite failure of issue was intended, does not here
apply to the whole class of executory devisees, but applies to
the daughter only; by means of which, the limitation over to
the daughter is contingent upon her survivorship, while as to
the sons no such contingency is created. The limitation over
to the daughter, dependent upon her survivorship, is to her
alone; while the limitation to the sons is to them or their
heirs. Neither of these peculiarities was noticed by this
court, in Williams v. Graves, 17 Ala. 62. The distinction in
point of fact between that case and this, may be thus stated:
That was a suit by the testator's executor, against the admin-
istrator of Mary Ann's husband, to support the limitation
over in favor of Sarah Glenn, should she survive her sister,
and to the two sons; and the court held the limitation over
good as an executory devise. In this case, Mary Ann still
lives, childless and past the age of child-bearing; Sarah
Glenn is dead, leaving issue; her husband, during her life-
time, was in possession of the negro, and after her death con-
tinued in possession, until it was levied on under an execu-
tion against him, and bought at the sale by the plaintiff in
error. The action is now brought by the children of Sarah
Glenn, to recover the negro from the execution purchaser.
Some of the plaintiffs died, pending the suit, and their repre-
sentatives were not made parties; and this is one of the errors
assigned.

In Williams v. Graves, 17 Ala. 62, it is said, that "there
can be no doubt that, by the fourth clause of the will, Mary
Ann would have taken an estate tail at common law, had the
subject matter of the will been realty." The language of the
fourth and fifth clauses is the same; and, therefore, the same
description is applicable to the estate which Sarah Glenn
took under the fifth clause. But by our statute, an estate
tail at common law is converted into an absolute estate in the
first taker; and, hence, Sarah Glenn took at once an absolute
estate. Her children, if they take at all, are to take by des-
cent, for that is the language of the will. It is only in the
event of her "dying without an heir of her body begotten,"
that the limitation over which this court has held to be good,
is to take effect. But, as she died with an heir of her body
begotten, the limitation over is defeated, and her estate re-

mains absolute; and, therefore, the marital rights of the husband attach, and the property becomes liable to his debts. Williams v. Graves, then, in this aspect of the case, does not touch the present case. The children here · are asking the court to carry out and perfect an estate tail for their benefit, and thus overrule Ewing v. Standifer, 18 Ala. 400, where a bequest of negroes to one for life, to be divided among her lawfully begotten heirs at her death, was held to vest the absolute property in the first taker. The case of Burfoot v. Burfoots, 2 Leigh, 119, is very similar to this. There, the testator gives to each one of his grandsons an estate expressly in fee simple, upon condition that each should, at his death, leave issue of his body lawfully begotten, but in default thereof, over to the survivor; and the court held, that the grandsons took the estate in fee, but that the limitation over was valid as an executory devise. In that case, the fee simple estate was created by the terms of the will; in this, by operation of the statute. In both, the condition is the same; and in this, the limitation is defeated by the performance of the condition.

But the case of Williams v. Graves cannot stand, in connection with the doctrine, that where an estate is given to two or more, and, upon one's dying without issue, then his share to the survivor or survivors, the effect of the word "survivor" is to limit the failure of issue to the death of the first taker. In every case commented on by the court in that opinion, the word "survivor," or "surviving," was descriptive of the entire class of ulterior devisees; while in that case, as in this, it is only applied to the daughter, and not to the sons. See all the cases commented on in that opinion: 1 P. Williams, 534; 10 Johns. 11; 16 ib. 381; 6 S. & R. 46; 6 Munf. 455.

In Williams v. Graves, supra, the court also omitted to notice another peculiarity in this case, viz: that the limitation over is to the sons "or their heirs." Upon this point, the following authorities are cited, to show that the will contemplates an indefinite failure of issue: Postell v. Postell, 1 Bailey Eq.; Massey v. Hudson, 2 Merivale, 129; Stevens v. Patterson, 1 Bailey Eq. 42; Barlow v. Salter, 17 Vesey, 479.

If the court should be willing to re-examine the doctrine

in Williams v. Graves, as to the effect of the word "surviving," in limiting the failure of issue to the death of the first taker, the following additional authorities will be found applicable: Chadock v. Chadock, Cro. Jac. 695; Hope v. Taylor, 1 Burr. 268; Carter v. Tyler, 1 Call, 143; Sydnor v. Sydnor, 2 Munf. 269; Bells v. Gillespie, 5 Rand. 273.

R. H. SMITH and SAM. A. HALE, for defendants in error:

The construction of the will found in this record has been made in Williams v. Graves, 17 Ala., 62.; see also Flynn v. Davis, 18 Ala., 132. In this case Judges Chilton and Parsons, as well as the Chief Justice, hold the limitation not too remote. The two former hold the limitation void for repugnancy to the previous bequest, a question not involved in the case at bar. The written argument submitted for plaintiff treats the bequests to the daughters as estates tail, by considering the fourth and fifth clauses of the will without the sixth (qualifying and explaining) clause. The error is also committed of limiting the word "surviving" to the daughters, and the word "heirs" to the sons; by simply reading the clause, without improperly breaking the sentences, the error will appear.

It is attempted too to give the word "descend" a technical meaning, and thereby destroy the limitation to the daughters' children, making them take as heirs of their mother, and converting the mother's into an absolute estate. The language is, "shall descend directly" from the testator; if they took as heirs of their mother, they would take through her personal representative, and the property could not, on the mother's death, "descend" directly to them. This clearly shows the sense in which the word "descend" is used in the will to be, take as remaindermen. If there is any estate in the brothers and sisters, and if "descend directly" means take by will from testator, it follows the limitation to the heirs of the body must be good, or how could that resting on its failure be good?

The construction contended for does not militate against Ewing v. Standifer, 18 Ala., 400. In this case, it is held that "lawfully begotten heirs" means heirs generally; that they could not take both as heirs and purchasers, and that by

rule of law they shall take as heirs. The expressions in the will under consideration mean neither heirs, nor heirs of the body, but children and descendants of the children living at the death of Graves. The children of the daughters, by the description of "heirs of their bodies," are made participants in the legacy during their mothers' lives. How could this be, if the testator used the words in their technical sense? The trust is only to preserve the remainder, and is executed on the mother's death; then the property descended directly to the children of the deceased daughter. Comby et al. v. McMichael et al., 19 Ala., 747, 749–57. Again, the right in the executor to take possession does not prevent the plaintiff suing, Phillips v. McGrew, 13 Ala., 255; and the plaintiff in error acquired no right under his purchase, there being no leviable estate in the husband. Fellows, Wadsworth & Co. v. Tann, 9 Ala., 999. In England, by statute William, (Com. Dig. title Abatement H. 33, 3., 126,) of which our statute (Clay's Dig., 314 § 4) is a copy, the action survives, and should be carried on by the surviving plaintiffs only. McGowen and wife v. Young, 2. Stew., 376; Anderson et al. v. Knight, 2 Georgia Rep., 123 ; Sel. Practice, 191. The plaintiffs might have sued (the action being trover) jointly or separately, and in an action *ex delicto* a failure to join, even when necessary, could only be taken advantage of by plea in abatement. 1 Chitty's Pl., 11 Am. ed. from 6 London ed., 66–7.

A copy of the *scire facias* executed on the husband inter-marrying with one of the plaintiffs pending the suit, is attached to the transcript, and which it is agreed by plaintiff's counsel shall be treated as part of the record. Independent, however, of this, it was the right of the husband to be made a party, and not doing so and not complaining, no one can object, were he not a party, especially on error. Morgan v. Painter, 6 Term Rep., 265.

DARGAN, C. J.—The material question in this case arises upon the construction of the will of Robert Graves, deceased. By the fourth clause, he gave to his daughter, Mary Ann, and to the heirs of her body begotten, two negro girls, a negro woman and child. The fifth clause is as follows: "I will and devise to my daughter, Sarah Glenn, and to the heirs of her

body begotten, a negro woman named Betty, of the age of twenty-six, and a negro boy named Sam, of the age of fifteen." The sixth clause is in the following language: "It is hereby declared more fully to be my intention, that the negroes willed and devised to my two daughters, as above, is for their support and maintenance, and to the support and maintenance of the heirs of their bodies begotten, or to be begotten; and to descend directly after their death to the heirs of their bodies begotten. If either of my daughters above named should die without an heir of their body begotten, then and in that case, the property so willed to them, or to the one that may so die without an heir, the property of the one so deceased shall pass off, and become the property of my surviving daughter and my two sons, or their heirs; each one to have a share alike in the property so willed to the one so dying without heirs."

It was shown that the plaintiffs are the children of Sarah Glenn named in the fifth clause of the will; that she departed this life before the suit was brought, and that the slave in controversy is one of those bequethed to her by the said will of her father. The defendant proved that the slave came into the possession of Sarah Glenn, and into the possession of her husband, before her death, and that he purchased said slave at sheriff's sale, as the property of the husband. Upon these facts the court charged the jury, that the plaintiffs were entitled to recover.

This will was before this court at a previous term, and the question then was in substance the same that it is now ; that is, whether the remainder over created by the will was valid as an executory devise. We held, that it was. Graves v. Williams, 17 Ala. 62.

But this decision is assailed as incorrect upon principle, and as opposed to the subsequent case of Standifer v. Ewing, 18 Ala. 400. It is said to be wrong upon principle in this: that by the will Sarah Glenn would have taken an estate tail, had the subject matter of the bequest been land instead of personal property, and consequently she took the absolute property in the slaves. All the authorities agree, that if personal property be given by words that would create an estate tail at common law, if the subject of the gift were land, then the

remainder over is void, and the first taker will take the whole. This is the familiar rule, and is disputed by no one; and if the fourth and fifth clauses of the will of the testator stood alone, unexplained and unqualified by the sixth clause, that rule would apply. But we are not to interpret a will from one clause alone, but by every part of it that bears upon the matter, and from the whole we are to ascertain the testator's intention; and if from the whole will the estate be not an estate tail, but an estate for life with a remainder over, we must support the remainder, if it can be done consistently with the rules of law.

Let us, then, examine the sixth clause of the will; for that qualifies and explains the previous gifts. In that clause the testator declares it to be his intention, that the slaves given to his daughters should be for their support and maintenance, and for the support and maintenance of the heirs of their bodies begotten or to be begotten. Did he use the term "heirs of the body" in its technical legal sense, or did he intend to signify by the use of it, "children?" That the latter was his intention, there can be no rational doubt; for it is too manifest to admit of argument, that the testator supposed that the children of his daughters would derive a benefit under the will, or from the use of the slaves, even before the death of their mother. We will not undertake to decide that the children did take a vested interest before the death of their mother, for it is not necessary to do so; but, from the language employed, we feel assured that the testator thought that they would be benefitted by the slaves even during their mother's life; and if so, then it would be impossible for him to have used the words in their technical sense, for no one can be the heir of another, or the heir of his body, until the death of the ancestor; and if the testator used the words "heirs of the body" under the impression that such heirs of the body would or might be benefitted by the gift during the life of their mother, he then could have intended by the use of those words "children," and not "heirs of the body" in their legal acceptation only.

The words, "heirs of the body" ordinarily are words of limitation, and not words of purchase; but they are frequently used in wills to denote "children," or as synonymous with

"children," and when used in that sense by the testator, we must construe them as words of purchase, and not of limitation. Doyle v. Bouler, 7 Ala. 246; Fellows, Wadsworth & Co. v. Tann, 9 Ala. 999. And when, from other expressions in the will, we see that the estate of the first taker is restricted to a life estate, and the property devised by the terms of the will is to vest in the children of the first taker that may be then (at the death of the first taker) in life, we must then construe the words "heirs of the body" as words of purchase, and not of limitation. Darden's Adm'r v. Burns' Adm'r, 6 Ala. 362, and cases there cited. Any other rule of construction than this would violate the intention of the testator, or fail to carry that intention out when it would be lawful to do so. Indeed, all the authorities agree, that though the words "heirs of the body," or "dying without issue" do ordinarily create an estate tail, yet they may be restricted and explained by other expressions; and if, from such other expressions, we see that the testator intended that the estate of the first taker should cease with his life, and the property given should then vest in his children, or, in default of children at the time of his death, then over to another, in such cases we cannot refuse to give effect, to the remainder without violating the well settled rules of law. See Darden's Adm'r v. Burns' Adm'r, 6 Ala., and Graves v. Williams, 17 Ala., *supra.*

Nor does the case of Standifer v. Ewing, 18 Ala. 400, impugn in the slightest degree this well settled rule of law. In that case, the gift was to Lydia Standifer during her natural life, and at her death to be equally divided between her lawfully begotten heirs. There were no words restraining or explanatory of the words, "lawfully begotten heirs," and therefore the gift was the same as if it had been to Lydia for life, and at her death to her heirs; and such a gift as this, beyond doubt, gave to Lydia the absolute property. But the whole reasoning of the court in that case clearly shows, that if there had been explanatory words used in that will which showed that the testator intended the children of Lydia, and not her heirs in the technical and legal sense of that term, then the remainder over would have been good. But it is useless to pursue this subject further. We entertain no doubt but that

the words "heirs of the body," as used in this will, must be construed as words of purchase; that is, they signify "children," and are not to receive their usual technical meaning. The sixth clause of the will clearly denotes that the testator used them in that sense, and we must attach that meaning to them, or violate his intention. Giving that interpretation to the words "heirs of the body," the remainders over, beyond doubt, are valid, and the plaintiffs, upon the death of their mother, became entitled to the slaves.

But it is insisted that the plaintiffs could not recover, because, by the will of the testator, the legal title to the slaves was vested in the executors, who were authorized by the will to take possession of the slaves, and hold them for the benefit of the testator's daughters. But it is sufficient to say, that, by the terms of the will, the title of the executors, as trustees, was to cease upon the death of the daughter; for the property was then to pass off, and descend to her children, or, in default of children, over to others; and we cannot continue the title of a trustee beyond the time contemplated by the will when it should be determined. Comby v. McMichael, 19 Ala. 747.

Another ground relied on by the plaintiff in error, is, that one of the female plaintiffs married after the suit was commenced, and her husband has not been made a party. But it is enough to say, even if that objection could avail any thing in this case, that it could only be taken advantage of by plea in abatement. Chitty's Pl. 33; Morgan v. Painter, 6 Term, 265. It may be well doubted, however, whether the objection could have availed, even if it had been presented by plea in abatement.

The last objection to the regularity of the judgment, is, that one of the plaintiffs died after the suit was brought, and his representative was not made a party. This objection could only have been raised in the court below to reduce the amount of recovery; but no charge was given or requested, touching the *quantum* of damages to which the plaintiffs were entitled, and, therefore, it cannot be raised here. It may, however, be remarked, that it is by no means certain, but if two or more join in an action of trover, and one should die

before the trial, that the other plaintiffs are not entitled to recover the full value of the chattel converted.

We are satisfied that there is no error in the record, and the judgment must be affirmed.