# ROBERTS AND WIFE *vs.* OGBOURNE.

[BILL IN EQUITY FOR RECOVERY OF SLAVES, ACCOUNT, &C.]

1. *Request to "heirs of the body" construed to vest in children as purchasers.*— Where the testator devised and bequeathed his entire estate, both

real and personal, to his wife during life or widowhood, and directed that, on her death or marriage, his real estate should be sold, and all his property be divided into seven equal parts, " *and then disposed of as follows—to the heirs of the body of Sarah B.* [his daughter] *one part, she, the said Sarah, to have the use and benefit thereof during her life, but not to sell or dispose thereof,*" &c.; and it appeared that Sarah B. was married, and had children living at the time the will was made, and that the testator, in another clause of his will, bequeathed a specific sum in money to her directly, in the event that he did not make an advancement of equal amount to her during his life,—*held,* that the children of Sarah B., who were living at the death of the testator's widow, took as purchasers under the bequest, and that the rule in Shelley's case did not apply. (STONE, J., *dissenting.*)

APPEAL from the Chancery Court at Montgomery. Heard before the Hon. WADE KEYES.

THE material facts of this case, as alleged in the bill, may be thus stated: John Breedlove died in Montgomery county, in 1838, having first made and published his last will and testament, which was duly admitted to probate after his death, and which contained the following provisions: The first clause directed the payment of all his debts. The second clause was a devise and bequest to his wife, Mrs. Nancy Breedlove, of his entire estate, both real and personal, during her widowhood. The third, fourth and fifth clauses contained bequests of ten dollars each to three of his children, to whom he had already made advancements. The sixth clause, after reciting partial advancements, of different amounts, already made to Sarah Bledsoe, Frances Bledsoe, Elizabeth Bledsoe, Martha Eubanks, and Lewis P. Breedlove, (his children,) and his intention to make further advancements to them, added: "But, if I should not make such advancements during my life, then it is my will and desire, that my wife should do so after my death, in the order in which they are named, out of the proceeds of the crop, or profits of the estate, (after maintaining the family, and paying all expenses,) at such times, and in such manner, as she may judge most fit and expedient; but, if neither myself nor my wife should make such advancements, then, after the death of my wife,

I give and devise the balance of such sums not then already advanced be paid out of my estate." The seventh clause directed all his real estate to be sold to the best advantage, at the death or second marriage of his widow. The eighth clause was in these words : "At the death or intermarriage of my wife, I direct, will and devise, that all my estate, both real and personal, after paying the foregoing bequests, be divided, if she die, into seven equal parts,—if she marry, into eight equal parts, she taking one part,—*and then disposed of as follows ; to the heirs of the body of Sarah Bledsoe, one part, she, the said Sarah, to have the use and benefit thereof during her life, but not to sell or dispose thereof; to* Lewis P. Bledsoe, one part; to the heirs of the body of Frances Bledsoe, one part, she, the said Frances, to have the use and benefit thereof during her life, but not to sell or dispose thereof; to the heirs of the body of Elizabeth Bledsoe, one part also, the said Elizabeth to have the use and benefit thereof during her life, but not to sell or dispose thereof; to the heirs of the body of Martha Eubanks, one part, she, the said Martha, to have the use and benefit thereof during her life, but not to sell or dispose thereof; to Joseph M. Breedlove, one part; and to Benjamin F. Breedlove, one part."

Mrs. Sarah Bledsoe was a daughter of the testator, and was, at the time the will was executed, the wife of William Bledsoe, and then had one or more children living. Mrs. Nancy Breedlove, the widow, and William Bledsoe, qualified as executors of the testator's will. Mrs. Breedlove died in the year 1836, having never married a second time; and William Bledsoe thenceforward acted as sole executor, and obtained from the orphans' court orders for the distribution of the estate, under which all the property was distributed, except one share which he retained, in right of his wife. Mrs. Sarah Bledsoe died in April, 1838, leaving several children surviving, the eldest of whom, Sarah H., married Young A. Roberts in October, 1847, being then seventeen or eighteen years of age. Anne, another daughter of Mrs. Bledsoe, married A. B. Vickers; and she and

Mrs. Roberts were the only children who were living when the bill in this case was filed. William Bledsoe died in October, 1855, and Robert H. Foxhall duly qualified as his executor.

In August, 1856, Roberts and wife filed their bill in chancery, against said Foxhall, as executor, and Vickers and wife; claiming one-half of the property which William Bledsoe had retained, and praying an account and general relief. Foxhall having died pending the suit, the cause was revived against Wm. H. Ogbourne, as the succeeding personal representative of William Bledsoe. The chancellor sustained a demurrer to the bill, for want of equity; and his decree is here assigned as error.

CHILTON & GUNTER, and E. M. KERR, for the appellants.—The bequest is in direct terms to "the heirs of the body of Sarah Bledsoe," who had children living at the time of the execution of the will. Her children answer the description in the bequest, and take as purchasers under it. The same clause of the will shows, that no such expression is used when a bequest is made to the testator's sons, and that it is several times used when he is providing for his daughters; and another clause shows, that the daughters themselves had already received advancements, and were to receive more. The intention being clear that the children should take as purchasers, that intention must prevail. *Shepherd v. Nabors*, 6 Ala. 631; *Dunn v. Davis*, 12 Ala. 135; *Ellis v. Ellis*, 15 Ala. 296; *Hodgson v. Ambrose*, Doug. 327; 9 Ala. 716.

The rule in Shelley's case has no application, because the estates of the ancestor and heirs are not of the same quality; Mrs. Bledsoe's interest being a mere equitable use for life, while her children take the legal estate.—2 Jarman on Wills, 244; 2 Story's Equity, § 845 a; 8 Paige, 152; 2 Paige, 122. In cases of bequests of personal property, the rule in Shelley's case is only applied to effectuate the intention, and not on grounds of public policy, as in devises of realty. If the subject of the bequest were realty, the

12

words used would not be sufficient to create a freehold estate in Sarah Bledsoe. The whole property is given to " the heirs of the body," and the time of enjoyment by them postponed; not the whole given to the ancestor for life, with remainder to " the heirs of her body." Moreover, the whole bequest is an executory trust, to which the rule in Shelley's case never has been applied.—1 White & Tudor's Leading Cases in Equity, 17; 2 Jarman on Wills, 253; 2 Kelly, 307; 3 ib. 559.

WATTS, JUDGE & JACKSON, contra.—"Heirs of the body," in their technical sense, are words of limitation, and not words of purchase; and there is nothing in the will to explain or limit their meaning, or to show that they were used in any other than their technical sense. The clause can have no other legal meaning, than if it was in these words: "To Sarah Bledsoe one part during her life, and at her death to the heirs of her body; she, the said Sarah, to have no right to sell or dispose of the same." If this were the language, the children of Sarah Bledsoe could not, under our decisions, take as purchasers from the testator.—Ewing v. Standefer, 18 Ala. 400; Hamner v. Smith, 22 Ala. 433; Machen v. Machen, 15 Ala. 373.; Snodgrass v. Landman, 26 Ala. 593, and authorities cited in these several cases; also Keyes on Chattels, §§ 246–50. The clause prohibiting Sarah Bledsoe from selling or disposing of her share, is void.—Keyes on Chattels, §§ 131–133. William Bledsoe having reduced the property to possession during coverture, his marital rights attached, and it became his absolute property.

R. W. WALKER, J.—In its technical sense, the term "heirs of the body" includes all persons who successively answer the description of heir of the body; and hence it embraces the whole line of lineal descendants, to the most remote generation. Technically construed, the expression is one which cannot be used to describe the children or grandchildren of a living person, for " nemo est hæres viventis." That the term, as used in this will, cannot be

understood in this technical sense, is plain; because the testator directs the estate to vest, during the life-time of Sarah Bledsoe, in the "heirs of the body" of Sarah Bledsoe. That this was the intention of the testator, seems too clear for doubt. On the death of the widow, the property is to be divided into seven equal parts, "and *then* disposed of as follows." To what time does *then* here refer? Obviously to the period of division, the death of Mrs. Breedlove. Next we have the manner in which these seven parts are to be *then* disposed of—"to the heirs of the body of Sarah Bledsoe, one part." If the testator had stopped there, there would be no room to doubt that the will would have operated a complete gift of that one part, to take effect at that time, in favor of the persons answering the description of heirs of the body of Sarah Bledsoe. The words which follow simply postpone the enjoyment of the property by the legatees during the life-time of Mrs. Bledsoe, by reserving to her the use and benefit of the same during that time. The qualification attached to Mrs. Bledsoe's use of the property, "not to sell or dispose thereof," (whether valid or not,) is at least indicative of the intention of the testator to give only a *use*, and not a property or *estate* in the *corpus* of the legacy. The heirs do not take on the death of Sarah Bledsoe, but they then come into the enjoyment of that which they took on the division made during her life-time. The term "heirs of the body" is, therefore, used to describe persons who take an interest before the death of Mrs. Bledsoe; and hence the persons answering that description take, not as her heirs, but directly from the testator, as purchasers under the will.

Mr. Fearne says, that when the words "heirs," &c., "operate only to give the estate imported by them to the heirs described originally, and as the persons in whom that estate is considered as commencing, and not derivatively from or through the ancestor, they are properly words of purchase."—Fearne Rem. 79, 194.

The attempt to bring this case within the rule in Shelley's case—erroneously so called, when applied to person-

alty—cannot succeed, without transposing and omitting words found in the will, and adding others not used by the testator. The proposition is, that the clause as it stands is the same in effect as if it read thus—"To Sarah Bledsoe during her life-time one part, but not to sell or dispose thereof, and after her death to the heirs of her body." This is not what the testator has said. He gives the one part to the heirs of the body of Sarah Bledsoe, reserving to her simply a *use* during her life-time; and this use he studiously seeks to distinguish from a property in the *corpus*, by denying to her the right to sell or dispose of it. The words found in the will give to the "heirs of the body," &c., the entire property in the *corpus* of the legacy; simply postponing the time of its enjoyment, in order that Mrs. Bledsoe may have the temporary use. The words as transposed, and added to, give to Mrs. Bledsoe the property in the *corpus* during her life, with *remainder* to the heirs of her body. In the clause as it stands, the idea of a *remainder* is studiously excluded, while in that proposed as a substitute, it is the controlling and fundamental idea. In the will as it was written by the testator, while the use of the property is secured to Mrs. Bledsoe, this use is clearly separated from the title to the *corpus* of the property, which vests at the time of the division in the persons designated as the heirs of the body of Sarah Bledsoe. These heirs take the entire property, not a remainder after a life-estate; and the reservation in favor of Mrs. Bledsoe is not of the thing itself, but of the use and benefit for a specified time. In this respect, the case is distinguishable from all those which have been held to fall within the rule in Shelley's case.—See *Shepherd v. Nabors*, 6 Ala. 631 ; Keyes' Chattels, § 359 (a), § 202 ; 2 Story's Eq. § 845 (a) ; *Wilks v. Greer*, 14 Ala. 437–442 ; *Golding v. Golding*, 24 Ala. 125.

It is to be borne in mind, that by the seventh clause of his will, the testator directs that, on the death or intermarriage of his widow, all his real estate shall be sold to the best advantage ; and the language of the succeeding clause must be construed with reference to this provision. Al-

Roberts and Wife v. Ogbourne.

though there is no express allegation to that effect, yet it is to be presumed that the executor sold the land as directed, on the death of Mrs. Breedlove ; and the exhibit attached to the bill seems to confirm this presumption. At all events, the words of the will must be construed as if his directions had been obeyed. Land ordered to be sold is regarded as money for every purpose necessary to effectuate the intent of the testator.

In *Clark v. Clark*, (8 Paige, 152,) it was held, that the bequest of the use of the residue of the testator's personal estate (which was directed to be sold), for the life of the legatee, or for any shorter period, does not entitle such legatee to the possession of the fund. The executor should retain the fund in his own hands, and pay over the income thereof to the legatee as it accrues ; and if the executor suffers the capital to go into the hands of such legatee, to enable him to collect the income himself, he must take sufficient security from the legatee to insure the return of such capital.—See, also, *Lovenhoven v. Shuler*, 2 Paige, 122.

This court has held, that the proper practice in the chancery court, in such cases, is to give the legatee for life the option of taking the money upon his executing a suitable bond, and, in case of his failure to do so, then to order the money to be let out on loan; and the interest collected annually, and paid over to him.—*Mason v. Pate*, 34 Ala. 392.

But, if we were to concede that Mrs. Bledsoe took a technical life-*estate*, not a mere usufructuary interest; still the rule would not apply; if the remainder is to vest during her life, in certain persons described as the "heirs of her body ;" for that fact would negative the idea, that these words were to be construed in their technical sense. Wherever these words are used as "*descriptio personarum*," and not as comprehending the whole line of descendants *in infinitum*, they are words of *purchase*, not of *limitation*, and the rule in Shelley's case has no application.

Mr. Fearne says, that the inquiry, in reference to the

application of the rule in Shelley's case, is reducible to two simple questions, viz: "Is the limitation to the heirs, &c., so calculated and directed, that the person claiming under it must entitle himself merely under the description of heir of the species denoted by the words in their technical sense? And if so, is there anything to restrain the same words from equally extending to and comprehending all other persons successively answering the same description, or from entitling them alike under it, and *eo nomine?* A negative answer to either branch of this inquiry seems to exclude the application of the rule."—Fearne Rem. 199.

We have already expressed the opinion, that the words "heirs of the body" were here used as descriptive of particular persons, who were to take an interest under the will during the life of their ancestor, and not as embracing all other persons who might successively answer the description of "heirs of the body of Sarah Bledsoe," understanding that expression in its technical sense. This being so, both branches of the inquiry proposed by Mr. Fearne must be answered in the negative.

The view we have taken derives support from the fact, that Sarah Bledsoe had children living at the date of the will, who might take under it, if we understand the words in their popular, not in their technical sense; that Mrs. Bledsoe had received advancements from her father during his life-time, and that he made a further separate provision for her by his will ; that she was at the time a married woman, and that her father must be presumed to have known that a gift to his daughter would enure to the benefit of the husband, to the exclusion of her children.

Our conclusion is, that the terms "heirs of the body of Sarah Bledsoe" were intended as descriptive of the children of Sarah Bledsoe, who might be living at the time appointed for the division of the property, namely, the death of the testator's widow ; that the persons thus described take from the testator directly, as purchasers, and not through Mrs. Bledsoe in succession, as her heirs. Hence the rule in Shelley's case has nothing to do with

the case.—See *Woodley v. Findlay*, 9 Ala. 720 ; *Dunn v. Davis*, 12 Ala. 135 ; *Powell v. Glenn*, 21 Ala. 466 ; *Durden v. Burns*, 6 Ala. 368 ; *Dudley v. Porter*, 16 Ga. 618 ; *Hodgson v. Bussey*, 2 Atk. 89 ; Keyes' Chatt. § 102.

Decree reversed, and cause remanded.

STONE, J.—I am not able to agree with either the reasoning or conclusions of the majority of the court, as expressed in their opinion. I have found no case, and I apprehend none can be found, which agrees with this in its facts, and which asserts that heirs of the body take as purchasers. In *Baldwin v. Carver*, (1 Cowp. 313,) Lord Mansfield said, "The rule of law most undoubtedly is, that a devise to the heirs general or special of a man alive, is void." In the same case, which in its principles is not distinguishable from this, save in the feature that there was in that case an attempted bequest over of the personalty if the life-tenant died without heirs or issue, that same learned judge remarked, "It strikes me, as at present advised, that the subsequent limitation of the personalty is too remote."

There is a rule, well defined and sensible, that "where a bequest is to children or grandchildren *generally*, payable at a certain time, or at the happening of an event, then all who fill the description and are *in esse* at *the time*, or at the *happening of the event*, take." The spirit and sense of this rule, I apprehend, lie in the following two principles : 1st, there is a policy of the law to so construe the language of the testator, as to let in the largest possible number of beneficiaries ; and, 2d, when, by the terms of the bequest, the property becomes necessarily divisible—namely, by the occurrence of *the time*, or the *happening of the event* specified, then the door must be closed against after-beneficiaries, or the result would be to make the distributive portions unequal ; which would defeat the express intention of the testator. These rules, thus expounded, lend no support to the opinion of the majority, because the will contains no provision for the division of the property among the heirs

of Sarah Bledsoe. On the contrary, such property could not properly be divided among the heirs, during the lifetime of Sarah Bledsoe.

A further argument : The rule invoked has no pertinence in determining whether the words "heirs of the body" designate a class of persons who take as purchasers, or are words of limitation, defining the quantum of estate in the first taker. It only obtains between persons, whose right to take as purchasers is shown by the terms of the instrument. The present will contains none of the words which impart to the phrase *heirs of the body* the more definite import of children.

The will of Mr. Breedlove gives a vested legacy to the "heirs of the body of Sarah Bledsoe," or it gives them nothing." It was postponed in enjoyment until the death, first of testator's widow, Mrs. Breedlove, and afterwards until the death of Sarah Bledsoe. The division of the estate, directed to take place at the death of Mrs. Breedlove, was not for the purpose of ascertaining the particular share that should go to each *heir* of Sarah Bledsoe's body, but to define the sum out of which the heirs could claim partition at the death of their mother, Sarah Bledsoe. This, then, created no necessity for closing the door against after-born children. In my opinion, the legal questions in this case stand precisely as they would stand, if the testator had himself perfected the division of his estate, to take effect at the death of testator's widow, and had bequeathed certain named property then to go "to the heirs of Sarah Bledsoe,—she, the said Sarah, to have the use and benefit thereof during her life, but not to sell or dispose thereof." Thus construed, no one would contend, that the particular class of heirs of Mrs. Bledsoe's body, who should be in life at the death of Mrs. Breedlove, would take as purchasers, to the exclusion of after-born children.

An argument may be supposed to be predicable on the collocation of the language of the bequest. The clause first gives the property to *the heirs* of Sarah Bledsoe, and then reserves a life-estate to Mrs. Bledsoe. I am not able

to perceive any force in this argument. The law regards the substance, rather than the form of things. The substance of this bequest is, that Mrs. Bledsoe was to have the use and benefit of this property during her life, but not to sell or dispose thereof; and at her death, the property to go to the heirs of her body.—See *Leech v. Cooley*, 6 Sm. & M. 98. Thus understood, no one would contend, that *the heirs* would be purchasers.—See *Britton v. Swinney*, 3 Mer. 116 ; *Bradley v. Peixoto*, 3 Ves. Jr. 324 ; *Simmonds v. Simmonds*, 8 Sim. 22 ; *Elton v. Eason*, 19 Ves. 73 ; *Moore v. Brooks*, 12 Grat. 135 ; *Kay v. Conner*, 8 Humph. 633 ; *Hooe v. Hooe*, 13 Grat. 245 ; *Ewing v. Standefer*, 18 Ala. 400 ; *Machen v. Machen*, 15 Ala. 373 ; 1 Roper on Legacies, 46 *et seq.* ; *Elmore v. Mustin*, 28 Ala. 309 ; 11 Geo. 67.

Holding that the term *heirs of the body*, as found in this will, is no more definite than it would be if it followed the creation of the life-estate in Mrs. Bledsoe, I cannot regard the present complainant as a purchaser.