# Findley *et al. v.* Hill *et al.*

### Statutory Action of Ejectment.

1. *Deed; construction thereof; estates created.*—A deed whereby the owner of real and personal property conveyed it to a designated person in trust for the use of his son M. for life, and at his death "for the use and benefit of the heirs of M. at the time of his death and their heirs and assigns forever. But in case he shall leave no heir or heirs living at the time of his death, then and in that case the same real and personal estate shall go to the heirs at law of the said" grantor, "living at the time of the death of the said M. and to be distributed according to the laws of the State of Alabama for the distribution of intestate estates," and it is apparent from the instrument itself and from the situation and circumstances of the parties that it was written by a person unacquainted with the use of legal technical words, and that the word heirs used in the first limitation meant cnildren, issue or descendants of M. living at his death, such deed vested in M. a life estate with remainder to his children living at his death.

APPEAL from the Circuit Court of Tuscaloosa.

Tried before the Hon. S. H. SPROTT.

This was a statutory action of ejectment brought by the appellants against the appellees. The facts of the case are sufficiently stated in the opinion.

From a judgment in favor of the defendants the plaintiffs appeal, and assign as error the giving of the general charge requested by the defendant.

H. B. FOSTER and FOSTER & OLIVER, for appellants. (No briefs came to the hands of the Reporter.)

[Findley *et al.* v. Hill *et al.*]

DANIEL COLLIER and HENRY A. JONES, *contra,* cited *Martin v. McRae,* 30 Ala. 116; *Smith v. Greer,* 88 Ala. 414; *Slayton v. Blount,* 93 Ala. 576; *Wilson v. Alston,* 122 Ala. 636.

TYSON, J.—This is an action of ejectment to recover a certain tract of land described in the complaint, brought by the children of Murchison Findley, who died on the 16th day of March, 1900. The defendants claim title under warranty deeds executed by Murchison in 1836 under which they, and those through whom they hold, have been continuously in possession of the lands claiming them adversely.

It appears that one Kenneth Findley being the owner of these lands, in 1826, conveyed them to his son John in trust for the use of his infant son, Murchison, then some fourteen years old, for life and at his death, "for the use and benefit of the heirs of Murchison Findley at the time of his death and their heirs and assigns forever. But in case he shall leave no heir or heirs living at the time of his death, then in that case the same real and personal estate shall go to the heirs at law of the said Kenneth Findley living at the time of the death of the said Murchison Findley and to be distributed according to the laws of the State of Alabama for distribution of intestate estates."

John Findley, the trustee, lived near the lands until his death in 1894. Kenneth Findley, the grantor and father of John and Murchison, had other children living at the date of the deed to John. The oldest child of Murchison was forty-eight years of age at the commencement of the suit. On the foregoing state of facts the trial court, at the request of the defendants in writing, gave the general affirmative charge in their favor.

If the deed to John created a fee in Murchison, or if it created an estate tail in him, or if the statute of limitations operated to effect a bar against the estate limited to the plaintiffs, of course, they have no right to recover and the instruction to the jury was proper. If, however, the estate was limited to the children or issue of Murchison, the statute of limitations would not bar the rights of the plaintiffs, because the convey-

ance to John was a dry use, which under the statute of uses passed the legal title to Murchison for life, in all respects as if the deed had been made without the intervention of a trustee.—*You v. Flinn,* 34 Ala. 409; *Gindrat v. W. R. of Ala.,* 96 Ala. 162; *Webb v. Crawford,* 77 Ala. 440. In such case, the remainders over to the unborn children of Murchison, and in default of such living at his death, to the heirs of the grantor living at the death of the life tenant, whether vested or contingent, would await the termination of the life estate, unaffected by the conveyance and warranty of Murchison, the remaindermen being without right or power to disturb the estate created by the deed of the life tenant.—Tiedeman on Real Property, § 481; *Pope v. Pickett,* 65 Ala. 491; *Pickett v. Pope,* 74 Ala. 122; *Bass v. Bass,* 88 Ala. 408; *Allen v. De Groodt,* 14 Am. St. Rep. 626 and note on page 635; *McCorry v. King's Heirs,* 39 Am. St. Rep. 165.

So, then, the only question in this case is, what was the effect of the limitation over upon the death of Murchison. In determining the intention of the grantor we may look not only to the words used, but the situation and circumstances of the parties, the context of the instrument and the fact, if it exists, that it was written by a person unacquainted with the use of legal technical words. In this case we have a father, with a number of living children, making provision for his minor son, and to that end, giving him an estate expressly for life with remainder for the use of his "heirs at the time of his death and their heirs and assigns forever," and, in default of "heir or heirs living at the time of his death" over to the heirs of the grantor living at the death of the life tenant and to be (then) distributed according to the law for the distribution of intestate estates. Now, looking first at the second limitation, there can be no doubt that by it the estate would vest in the persons answering to the description of "heirs" of Kenneth Findley, the grantor, living at the death of Murchison, the life tenant.—*Roberts v. Ogbourne,* 37 Ala. 174. These persons, however, would be also the heirs of Murchison, if he had died without descendants. To hold then that the first limitation,

upon the death of Murchison, is to the heirs general of the life tenant would make the second limitation over to the same persons as living. It is impossible to suppose that any grantor would intend such a result. It is certain, then, that the first limitation to the heir or heirs of Murchison living at his death, was not and could not have been intended for the same persons as the second limitation. This being true, the only other meaning open for our adoption is, that the first limitation was to the children, issue or descendants of Murchison living at his death. Adopting this construction, the deed is congruous in all its parts.

While it is true that courts will respect and enforce the technical meaning of "heirs" or "heirs of the body," so as to make them strict words of limitation, after a life estate to the ancestor, where there is nothing to show that they are not used in a different sense, there is a disposition, especially since the abolition of estates tail, to seize upon slight circumstances to make them words of purchase.—*May v. Ritchie*, 65 Ala. 602; *Price v. Price*, 5 Ala. 581; *Williams v. McConico*, 36 Ala. 22; *Dunn v. Davis*, 12 Ala. 140; *Watson v. Williamson*, 129 Ala. 362. The fact that the successive limitations over on the death of Murchison would be limitations to the same persons as both dead and living when the words are given a technical meaning, shows that the deed was written by a person unskilled in the use of technical words and that the grantor must have used "heir or heirs" in the first limitation in the narrower sense of children, issue or descendants.—*Bell v. Hogan*, 1 Stew. 539; *Twelves v. Nevill*, 39 Ala. 175; *Campbell v. Noble*, 110 Ala. 382; *May v. Ritchie, supra; Williams v. McConico, supra; Roberts v. Ogbourne, supra;* 15 Am. & Eng. Ency. Law (2d ed.), 324.

There is another circumstance which adds force to this construction. The conveyance was of real and personal property consisting of "slaves," "horses," "hogs" and "one set of carpenter's tools." A limitation of psrsonal property over on indefinite failure of issue is void at the common law.—1 Brick. Dig., 786, § 9.

It is entirely clear that the grantor did intend to make a limitation over, after the life estate, but he could

not have intended, both from the nature of some of the property and the prohibition of the law, to limit the personal property after an indefinite failure of issue. And as the real and personal estate is limited by the same clause, the courts are disposed, the more readily, to infer an intent to limit on a definite failure of issue. *Bell v. Hogan supra; Alford v. Alford,* 56 Ala. 350; 2 Jarman on Wills, Ch. XL, I.

In this case the clause in the deed prescribes, that the first limitation on the death of Murchison, shall be an absolute fee in the "heir or heirs" of Murchison, "living at the time" of his death, and in default of such living person to take, over (in fee) to the persons answering to the description of heirs of the grantor at that time. There is no room for saying that there was the least purpose to make a limitation upon indefinite failure of issue. The definite time fixed for division and for the vesting of a fee in any event is the death of Murchison. No estate tail, therefore, is limited, since the purpose in such case is a limitation upon indefinite failure of issue and not to a particular person or a particular class of persons. Here, a person claiming as a remainderman would have to show not only that he was an "heir" of Murchison, but by the express words of the deed that he was living at his (Murchison's) death, which excludes the idea of the creation of estates tail—an indefinite failure of issue.—*Roberts v. Ogbourne, supra;* Fearne on Rem., 199.

It follows that, under the deed, Murchison took a life estate with remainder to his children living at his death and consequently the plaintiffs are entitled to recover.

Reversed and remanded.