# Castleberry *v.* Stringer.

*Bill to Quiet Title.*

(Decided February 1, 1912. 57 South. 849.)

1. *Wills; Construction; Intent.*—In construing a will the testator's intent must prevail if consistent with law or public policy.

2. *Same; Evidence to Aid in.*—In ascertaining a testator's intent the court will place itself as far as possible in the testator's position when the will was executed, by considering the surrounding circumstances, the condition of his estate and family, his social relations, affection for beneficiaries, etc.

3. *Same; Favoring Validity.*—The court will adopt the construction which will effectuate the will as against one which would avoid it, if it can be fairly so construed.

[Castleberry v. Stringer.]

4. *Same; Skill of Draughtsman.*—In construing the will, the fact that it was drawn by an unskilled person may be considered.

5. *Same; Heirs.*—While the word "heirs" has a fixed legal meaning which must be given it when used in a will, it may be also used in a non-technical sense, and when the context requires it to be so construed to effectuate a testator's intent, the word may be given the meaning of "children."

6. *Same.*—The will considered in the light of the fact that it was drawn by an unskilled person unfamiliar with technical terms, and that when it was executed sister F. was about thirty-two years of age, and the life tenant, testatrix's mother much older, and it is held that in view of the improbability of the sister dying before the life tenant, so as to have heirs at the life tenant's death, that the word "heirs" would be construed as meaning "children" so that the sister's children would take a vested remainder in the residue of the property other than the Hubbard building.

7. *Wills; Estates Passing; Contingent Remainder.*—The law does not favor contingent remainders and lapses, but rather favors vested remainders.

APPEAL from Talladega City Court.

Heard before Hon. CECIL BROWNE.

Bill by Fannie C. Stringer against E. C. Stringer and others to quiet title. From a judgment for complainant, W. B. Castleberry, as guardian for one of defendants, appeals. Affirmed.

The bill contains the usual statutory averments, making a copy of the will an exhibit, and setting out what complainant supposes to be the effect of the will. Olmsby Tilton is made a respondent, with the allegation that she is insane, and is the daughter of a sister of the testatrix. A guardian was appointed, who filed an answer, setting up that she was an heir of the testatrix and entitled to a one-third interest in the property. The will is as follows: (1) Payment of debts. "(2) I direct that my mother, Mrs. N. C. Carroll, is to have the entire use and control of all of my property during her life. (3) At the death of my mother, I want the Hubbard building on East street, now used by the B. & A. R. R. Co. as an office, to my brother James E. Carroll. The residue of my property, both real and personal, to

go to the heirs of my sister Mrs. Fannie C. Stringer."
Then follows appointment of her mother as executrix
without bond.

It appears from the evidence that the testatrix died
in 1898; that her mother, Mrs. Carroll, survived her,
and died in 1905; that, before Mrs. Carroll's death, one
of Mrs. F. C. Stringer's children died; that, after Mrs.
Carroll's death, A. P. Stringer and E. Gipson Stringer,
the remaining children of Mrs. F. C. Stringer, made
Mrs. Stringer a deed to all their interest in the proper-
ty. It further appeared that, since the death of her
mother, Mrs. Stringer and her children have been in the
possession of the property, and have claimed the prop-
erty, subject to the rights of Mrs. Carroll. Olmsby Til-
ton appears to have been the child of a deceased sister
of the testatrix, Mrs. Savery.

W. B. CASTLEBERRY, for appellant. There was no one
at the time of the termination of the life estate who
measured up to the qualification nominated in the will,
that is, heirs of Mrs. Fannie Stringer. The title of an
heir is called into existence by the death of the ancestor.
—2 Washburn Real Property, 398. The use of technical
terms by a testator creates a presumption that he in-
tends them in a technical sense unless the context shows
clearly that they are used in a different sense.—*DeBar-
delaben v. Dixon,* 166 Ala. 59. There is nothing in the
context to indicate that the word "heirs" was used
other than in its technical sense. There being no per-
son capable of taking under the provisions of the will
at the time of the falling in of the life estate, the prop-
erty descended to Mrs. Stringer, Carroll and Tilton.—
Sec. 6154, Code 1907.

KNOX, ACKER, DIXON & SIMS, for appellee. The
fundamental and cardinal rule in the interpretation of

wills is that the intention of the testator, if not incon-
sistent with some established rule of law or with public
policy, must control, and it is the duty of the courts
to ascertain such intention and to give force and effect
to the scheme that he had in mind for the disposition of
his estate.—30 Am. & Eng. Enc. of Law, 2d Ed., p. 661.
A cardinal principle in the construction of wills is to
ascertain the intent of the testator and give it effect if
it is not prohibited by law.—*Smith v. Smith,* 157 Ala.
79. In endeavoring to construe a will so as to ascertain
the intention of the testator, the courts will put them-
selves as far as possible in the position of the testator
by taking in consideration his modes of thought and the
circumstances surrounding him at the time of the execu-
tion of the will. Thus, courts will consider the condi-
tion of his family and estate, the comparative amounts
of realty and personalty, his affection for the legatees,
his social relations, etc.—30th Am. & Eng. Enc. of Law,
2d Ed., p 666. When a will fairly construed is suscepti-
ble of two constructions, one of which would render it
inoperative and the other give effect to it, the duty of
the court is to adopt the latter construction.—30th Am.
& Eng. Enc. of Law, 2d Ed., p. 667. If the language
of the instrument is uncertain, or there is a latent
ambiguity, evidence is admissible of the testator's feel-
ing towards, and his relation to, the persons affected by
the will, in order to interpret his intentions and to ex-
plain the doubtful words.—30th Am. & Eng. Enc. of
Law, 2d Ed., p. 679. The facts showing the person
drawing the paper was unskilled will be considered
in construing the will.—*Findley, et al. v. Hill,* 133 Ala.
229-233; *May v. Richie,* 65 Ala. 602. Where the word
"heirs" is used in an instrument, and from the evidence
showing the circumstances which attended the making
of the will, and the fact that the will shows it was

drawn by an unskilled person, and the necessary construction requires it, the word "heirs" will be held to mean children.—*Finley v. Hill,* 133 Ala. 229-233; *Campbell v. Noble,* 110 Ala. 382-394; *May v. Richie,* 65 Ala. 602; *Twelves v. Neville,* 39 Ala. 175-180; *Flanagan v. State Bank,* 32 Ala. 508-511; *Powell v. Glenn,* 21 Ala. 458-466; *Fellows v. Tann,* 9 Ala. 999-1004; *Kelbach v. Clarke,* 133 Ia. 215, 12 L. R. A. (N. S.) 801. "Heir" is a legal term, and is used in a legal sense, with a fixed legal meaning. The word has a technical signification, and when unexplained and uncontrolled by the context, must be interpreted according to its technical sense, or its strict legal import. But the word, notwithstanding its primary and well understood meaning, is susceptible of more than one interpretation, and has in law several significations, under different circumstances, and the word "heirs," as frequently happens is not used in any exact or technical way. The signification of the word is in all cases a question of intention. "Heirs" is very generally construed as meaning children, where the context so requires, where it is necessary that the term be so construed in order to carry out the clear intent of the instrument, or where it is plain that it is used in a popular sense, as a word of description referring to a certain class of persons.—21 Cyc. p. 418.

ANDERSON, J.—"The fundamental and cardinal rule in the interpretation of wills is that the intention of the testator, if not inconsistent with some established rule of law or with public policy, must control, and it is the duty of the courts to ascertain such intention and to give force and effect to the scheme that he had in mind for the disposition of his estate."—30 Am. & Eng. Ency. of Law, (2d Ed.) p. 661. "A cardinal principle in the construction of wills is to ascertain the intent of

the testator, and give it effect if it is not prohibited by law."—*Smith v. Smith,* 157 Ala. 79, 47 South. 220, 25 L. R. A. (N. S.) 1045.

"In endeavoring to construe a will so as to ascertain the intention of the testator, the courts will put themselves as far as possible in the position of the testator by taking in consideration his modes of thought and the circumstances surrounding him at the time of the execution of the will. Thus courts will consider the condition of his family and estate, the comparative amounts of realty and personalty, his affection for the legatees, his social relations," etc.—30 Am. & Eng. Ency. Law (2d Ed.) p. 666.

"When a will fairly construed is susceptible of two constructions, one of which would render it inoperative and the other give effect to it, the duty of the court is to adopt the latter construction."—30 Am. & Eng. Ency. Law (2d Ed.) p. 667. "If the language of the instrument is uncertain, or there is a latent ambiguity, evidence is admissible of the testator's feeling towards, and his relation to, the persons affected by the will, in order to interpret his intentions and to explain the doubtful words."—30 Am. & Eng. Ency. Law (2d Ed.) p. 679.

"The facts showing the person drawing the paper was unskilled will be considered in construing the will."— *Findley et al. v. Hill,* 133 Ala. 229-233, 32 South. 497; *May v. Richie,* 65 Ala. 602. "Where the word 'heirs' is used in an instrument, and from the evidence showing the circumstances which attended the making of the will, and the fact that the will shows it was drawn by an unskilled person, and the necessary construction requires it, the word 'heirs' will be held to mean children."—*Findley v. Hill,* 133 Ala. 229-233, 32 South. 497; *Campbell v. Noble,* 110 Ala. 382-394, 19 South. 28; *May v. Richie,* 65 Ala. 602; *Twelves v. Nevill,* 39 Ala. 175-

180; *Flanagan v. State Bank*, 32 Ala. 508-511; *Powell v. Glenn*, 21 Ala. 458-466; *Fellows v. Tann*, 9 Ala. 999-1004; *Kalbach v. Clarke*, 133 Iowa, 215, 110 N. W. 599, 12 L. R. A. (N. S.) 801, 12 Ann. Cas. 647.

" 'Heir' is a legal term, and is used in a legal sense, with a fixed legal meaning. The word has a technical signification, and, when unexplained and uncontrolled by the context, must be interpreted according to its technical sense, or its strict legal import. But the word, notwithstanding its primary and well-understood meaning, is susceptible of more than one interpretation, and has in law several significations, under different circumstances, and the word 'heirs,' as frequently happens, is not used in any exact or technical way. The signification of the word is in all cases a question of intention. 'Heirs' is very generally construed as meaning children, where the context so requires, where it is necessary that the term be so construed in order to carry out the clear intent of the instrument, or where it is plain that it is used in a popular sense, as a word of description referring to a certain class of persons."—21 Cyc. p. 418.

The will in question was drawn by a person admitted to be unskilled in such work and unfamiliar with technical law terms, and it is manifest that the testatrix intended to devise all of her property to her mother, Mrs. Carroll, for life, with a vested remainder in the Hubbard property to her brother, James E. Carroll, and a vested remainder as to the residue of her estate in the children of her sister, Mrs. Fannie C. Stringer.

The law of Alabama is rather opposed to contingent remainders and lapses, and favors vested remainders, and this rule of construction is especially applicable, when it is reasonably possible to harmonize the words of a will with an intention of the testator to preserve the remainder and prevent a lapse. The life tenant was the

[Castleberry v. Stringer.]

mother of Mrs. Stringer, and it was unnatural to suppose that the mother would survive her daughter, the said Mrs. Stringer; but which was essential in order for her (Mrs. Stringer) to have heirs who could take upon the death of her mother, the life tenant. Therefore, to construe the word "heirs" in a technical sense would defeat the remainder and the intention of the testatrix, unless the mother survived her daughter, the said Mrs. Stringer. As well expressed in the opinion of the learned trial court: "At the time of the making of the will the complainant Fannie C. Stringer was about 32 years of age. The life tenant was her mother, and necessarily considerably older. In all human probability, Mrs. Stringer, the daughter, would long outlive the life tenant, her mother, and therefore could have no 'heirs' at the death of such life tenant. It seems to me it would be a strained construction to hold that the word 'heirs' in this clause of the will was used in its strict legal signification. On the other hand, taking into consideration the inexpert manner in which this will is drawn and worded and the state of facts as shown by the proof, under which the will was made, for the purpose of 'elucidating the scheme of disposition which occupied the mind of the testator,' and placing myself as near as possible in the situation of the person whose language I am construing, I think the court is justified in departing from the strict legal interpretation of the word 'heirs,' and in holding that this word was used as synonymous with and in lieu of the word 'children.' " We therefore hold that the will gave a life estate to the mother of testatrix and a vested remainder in and to the property, other than the Hubbard building, to the children of Mrs. Stringer, and do not think that the property descended under the terms of section 6154 of the Code of 1907, upon the theory that there was no

[Alexander v. Gibson, et al.]

one capable of taking upon the termination of the life estate. The case of *DeBardelaben v. Dickson,* 166 Ala. 59, 51 South. 986, is not opposed to•the present ruling. In the first place, it did not appear that the scrivener was ignorant of the meaning of the term "heirs." Moreover, it was not reasonable to anticipate a lapse, as the remainder went to the heirs of the life tenant, and there would naturally be heirs to take upon her death. Here the remainder did not go to the heirs of the life tenant, but to those of a third person, who was younger than the life tenant and whom the testatrix had every reason to think would survive the said life tenant, thus preventing a qualified taker upon the expiration of the life estate if the word "heirs" is given a strict, technical meaning.

The decree of the city court is affirmed.

Affirmed. All the Justices concur.