## FLANAGAN *vs.* STATE BANK.

[BILL IN EQUITY FOR REFORMATION OF DEED.]

1. *Variance.*—A party cannot have relief in equity, on proof of a case variant from that alleged in his bill.

2. *When feme covert may come into equity for protection of separate estate.*—A married woman, having a separate estate created by deed, cannot come into equity against an execution creditor of her husband, to enjoin the sale of a slave which belonged to her separate estate, and which she had conveyed to her children.

APPEAL from the Chancery Court of Marengo. Heard before the Hon. WADE KEYES.

THIS bill was filed by Bennett Flanagan, Francis L. Flanagan, and Mrs. Lucy Hylton, their mother, against Sterling Hylton, the husband of Mrs. Lucy Hylton, John

Whiting, the commissioner and trustee of the State Bank and Branches, and other parties not necessary to be named. It sought, 1st, to enjoin the sale of a slave named Linah, on which an execution in favor of the State Bank against Sterling Hylton had been levied; 2d, to reform a deed under which the complainants claimed said slave; and, 3d, to have said slave declared subject to the trusts of a deed by which a slave named Cicely, who was afterwards exchanged for Linah, was conveyed to trustees for the use and benefit of the complainants. The slave Cicely was conveyed by Lewis Ford, the father of Mrs. Hylton, (then Flanagan,) in September, 1825, to R. W. Roberts and William Cottrell, "as trustees for Lucy Flanagan and her children." This deed directed, that the proceeds of the labor or hire of the slave should be applied by the trustees "to the use and benefit of the said Lucy Flanagan and her children during the natural life of said Lucy, and then said negro, with all her increase, to go and descend to the said children of the said Lucy;" and secured Mrs. Flanagan's interest to her sole and separate use. The girl Cicely was sold or exchanged, some time in 1836, after the death of Mrs. Flanagan's first husband, for the girl Linah. The bill alleged, that the slave was sold by Cottrell, the trustee, at the request of Mrs. Flanagan, and that Linah was bought with the proceeds of the sale; that it was the intention of the parties that Linah should be held under the trusts of the deed in the place of Cicely; that for this purpose she was delivered by the trustee to Milton Ford, who was a brother of the said Lucy, "upon the express understanding that said girl was to be settled upon said Lucy and her children, in the place and stead of the girl Cicely, to be held in the same manner, and subject to the same deed;" that said Milton Ford accordingly delivered the girl Linah back again to the said Lucy, (who soon afterwards married Sterling Hylton,) and at the same time executed a deed, by which said slave was conveyed, through mistake, "to the heirs of said Lucy," instead of "to the sole use and benefit of the said Lucy and her children;" and that

the mistake in the deed was only discovered a short time before the filing of the bill.

The complainants took the deposition of Milton Ford, who testified, in substance, as follows: " The girl Cicely, named in the deed of Lewis Ford to Cottrell, did not suit Lucy. Cottrell thereupon had her appraised, with her children. She was appraised at $600. Cottrell had the girl Linah, recently purchased by him at the price of $340. He gave Linah, with $260 in cash, to Lucy Flanagan, and took Cicely and her children himself, and as his own. This was done, with Lucy Flanagan's consent, in September, 1836. Upon the exchange being made as above stated, Cottrell assigned to witness the bill of sale for Linah which he had, and witness gave Cottrell his obligation to convey Linah, or make such disposition of her, as Lucy Flanagan should direct." "When witness made the deed, he intended to carry out the intention of the first deed; but, at the instance and request of Lucy, made it to her children, or heirs. One Alexander, a justice of the peace, who was a plain, common man, drew the deed. Neither Alexander nor witness knew anything about drawing deeds. When this deed was drawn, neither the original deed of Lewis Ford, nor a copy, was in the possession of witness; nor had witness ever seen it."

On final hearing, on pleadings and proof, the chancellor dismissed the bill, absolutely as to Mrs. Hylton, but without prejudice as to the other complainants; from which decree the complainants appeal, and which they now assign as error.

Wm. M. Byrd, for appellants.

I. W. Garrott, and Wm. M. Brooks, contra.

STONE, J.—The decree of the chancellor in this case must be affirmed, for a variance between the allegations and the proof.

The bill avers, that the second deed, "exhibit B," was intended to conform in its provisions to the first deed, "exhibit A." The first deed vests the title in Mrs. Flanagan and her children during her life, and at her death in

her children. The second deed vests the entire title in the *heirs* of Mrs. Flanagan, then Mrs. Hylton, excluding her entirely. Heirs, in this instrument, means children. The only witness, Mr. Ford, who speaks at all as to the intention he had in drawing the second deed, says he had never seen the first deed; and Mrs. Hylton herself gave the directions under which he drew the deed. There is no evidence of any mistake in the frame of the deed, by which Mrs. Hylton was omitted as one of the grantees. This statement of the case presents a fatal variance between the allegations and the proof.—Lockhart v. Cameron, 29 Ala. 362, and authorities cited.

The first deed, marked "exhibit A," secured Mrs. Flanagan's interest in the slave to her separate use and enjoyment; and this separate estate was not confined to any particular coverture. When she became discovert, and married a second time, the property, so far as she held any interest under that deed, was still her separate estate.—See 2 Bright on H. & W. 204–5. The gravamen of this bill is, that the slave Linah was received in exchange for Cicely; and that the trusts created by the first deed, extend to and embrace the slave Linah. On this aspect alone have the complainants any right to relief.

This view, under the proof in this record, places Mrs. Hylton in an inextricable dilemma. If, under the exchange of slaves, her interest ceased to be her separate estate, then the marital rights of her husband attached to such interest upon her intermarriage with him, provided she had the slave in actual or constructive possession. This, of course, would destroy all right in her; and the deed afterwards executed to her heirs, placed her in an attitude no more favorable to the relief which she seeks.

If, on the other hand, the trusts of the first deed extend to the slave Linah, then, her interest being a separate estate, she had the undoubted right, notwithstanding her coverture, to dispose of that interest as a *feme sole*. Having the title conveyed to her heirs, [children,] as by the second deed was done, she could no longer assert any

interest in the slave.—2 Bright on H. & W. 220, *et seq.*; Fettiplace v. Goryn, 1 Vesey, jr. 46.

The decree of the chancellor is affirmed.