## BETHEA'S EXECUTOR *vs.* SMITH.

[DETINUE FOR SLAVE.]

1. *Bequest to "heirs," with limitation over in event of death "without leaving lawful issue."*—Under a devise and bequest of property "to be equally divided among my heirs," "and in the event of the death of either, without leaving lawful issue," his portion "to be equally divided among the surviving heirs," the limitation over is not too remote.

2. *Assent to legacy.*—Where property is devised and bequeathed by a testator, to 'be equally divided among his heirs', 'and in the event of the death of either, without leaving lawful issue, that his portion shall revert to, and become a portion of the estate, and be equally divided among the surviving heirs', the executor's assent to the

legacy to the first taker enures to the benefit of the persons who are to take under the limitation over; and on the happening of the specified contingency, the legal title passes directly to them, and does not revert to the estate.

APPEAL from the Circuit Court of Wilcox. Tried before the Hon. JNO. K. HENRY.

THIS action was brought by Abijah Miller, as executor of the last will and testament of David Bethea, against Malcolm W. Smith, to recover a negro woman by the name of Zena, together with damages for her detention; and was commenced on the 8th September, 1860. The plaintiff claimed the slave under the sixth clause of the testator's will, which is copied in the opinion of the court; while the defendant claimed under a purchase from John W. Bridges, whose wife, Mrs. Elizabeth Bridges, was a daughter of said testator. It was admitted that, on a division of the property, in 1847, under the sixth clause of the will, the slave was allotted to Mrs. Bridges, and continued in the possession of herself and her husband until sold by the latter, during the life of his wife, to the defendant; and that Mrs. Bridges died, in October, 1858, "leaving no child." The court charged the jury, "that under the provisions of said will, Mrs. Bridges took an absolute estate in the slave, the remainder over being too remote, and that the plaintiff could not recover in this action." The charge of the court, to which the plaintiff excepted, is the only matter assigned as error.

PETTUS & DAWSON, for appellant.—The words "without leaving lawful issue," in the sixth clause of the will, are a limitation to issue living at the death of the first taker; and the words "surviving heirs," in the same clause, have the same effect. In executory devises of personal property, the courts will struggle to limit such general expressions, and confine them to issue living at the death of the first taker.—Fearne on Remainders, (4th Amer. ed.,) m. p. 472; *Peak v. Pegden*, 2 Durn. & East, 720; *Porter v. Bradley*, 3 Durn. & East, 143; *Doe v. Jeffrey*, 7 Durn. & East, 589; *Cudworth v. Thompson*, 3 Dess. 256; *Anderson v. Jackson*,

16 Johns. 382; *Flinn v. Davis*, 18 Ala. 132 ; *Isbell v. Maclin*, 24 Ala. 315 ; *Roberts and Wife v. Ogbourne*, 37 Ala. 174 ; *Bell and Wife v. Hogan*, 1 Stewart, 536.

S. J. CUMMING, *contra.*—1. The limitation over is void, because it is repugnant to the prior absolute gift.—*Moody v. Walker*, 3 Ark. 188, and cases there cited ; *Patterson v. Ellis*, 11 Wendell, 299, and cases cited ; *Flinn v. Davis*, 18 Ala. 132.

2. The limitation is void, also, for remoteness.—*Burford v. Lee*, Freeman's Chan.' Cases, 210 ; *Campbell v. Harding*, 2 Russ. &. My. (13 Eng. Ch.) 90 ; *S. C.*, 2 Clark & Fin. 421; 1 Madd. 264 ; 6 Brown's P. C. 450 ; *Moody v. Walker*, 3 Ark. 187 ; *Patterson v. Ellis*, 11 Wendell, 259 ; *Flinn v. Davis*, 18 Ala. 132 ; *Mason v. Pate's Executor*, 34 Ala. 379 ; *Parish v. Parish*, 37 Ala. 591.

3. By statute in this State, (Clay's Digest, 157, § 37,) estates-tail are converted into estates in fee ; and the same rule applies to personal, as to real estate.—12 Wheaton 568 ; 18·Ala. 132 ; 34 Ala. 379.

BYRD, J.—The appellant, as executor of the last will and testament of David Bethea, deceased, instituted this suit, to recover of the appellee a slave, and predicated his title upon the will, the sixth clause of which is in these words : "It is my will and desire, that all the residue or remainder of my property, both real and personal, be divided equally among my heirs, my wife excepted, whose portion has already been set apart; and in the event of the death of either, without leaving lawful issue, that their portion of my estate herein bequeathed shall revert to, and become a portion of my estate, and be equally divided among the surviving heirs."

The record shows that the slave sued for was received by a child of the testator, in 1847, upon a division of the property bequeathed by the above clause of the will; and that she afterwards "died, leaving no child." A person may die "leaving no child," and yet leave issue. But taking the word " child " in the sense of " issue," without intimating that such is its meaning, we will proceed to the

consideration of the main question presented by the bill of exceptions.

The appellee contends, that the limitation over in the event of the death of the first taker, "without leaving lawful issue," is void, and that the first taker took an absolute estate in the slave. This question has been discussed with great learning in the books, and many adjudications have been made upon it, variant and conflictive. We do not propose to enter upon a review of them. Many difficulties have arisen, and great nicety of discrimination is required, in the correct application of the rule in *Shelley's case*, and the rules of law with reference to executory bequests and. devises, perpetuities, and fees conditional, to testamentary limitations of real and personal property.

At common law, an estate in fee to land could be limited upon an estate in fee to the same, by way of executory devise. By the ancient common law, an absolute estate in personalty could not be limited upon a life-estate therein, much less upon a prior absolute estate. But, in the progress and expansion of the principles of the common law, to accommodate themselves to the advancing dignity of personal property during the last millennium, the courts, where the common law prevailed, have ceased to make any material distinctions between limitations over of real and personal property, except as to fees conditional, or estates-tail, if either can be *strictly* denominated a limitation. It may be that a limitation over of some species of personalty may not be authorized by law, when, if it were of land, it would be. We state only a general rule, and not the exceptions, if any. Our recognition of the rule is sustained by the following authorities: Keyes on Chattels, ch. 2, § 23, and *post ; Flinn v. Davis*, 18 Ala. 132 ; *Jemison v. Smith*, 37 Ala. 185 ; and see the authorities cited by Chancellor Keyes, in his very learned and critical work on the Law of Chattels, ch. 2 ; and by the court in the cases cited.

In this case, it may be that an absolute estate is given to the first taker; but, if so, it is defeasible upon a contingency expressed in the will; and that is, the dying of the first taker without leaving issue ; and on the happening of

this contingency, then over. This is now tolerated by the law, if the persons who take the second estate are designated, and can take as purchasers. The words "my heirs," and "the surviving heirs," in the above clause of the will, are not words of limitation within the meaning of the rule in *Shelley's case*, nor has that rule any application to this case. The meaning of those words may be ascertained, so far as the law can do so on the face of the will, by the principles settled in the following cases : *Flanagan v. The State Bank*, 32 Ala. 508 ; *Shackleford v. Bullock*, 34 Ala. 424 ; *Williams v. McConico*, 36 Ala. 28 ; *Jemison v. Smith*, 37 Ala. 185, and the authorities cited in the above cases.

The words, "*in the event of the death of either without leaving lawful issue*", refer to the persons who take under the words "my heirs", and do not import an indefinite failure of issue, but issue living at the death of each of the first takers, or not then in existence. *If any*, the limitation over does not take effect ; *if none*, it does take effect. The rule against perpetuities is not infringed by this clause of the will.—Roper on Legacies, 1546 ; *Flinn v. Davis, (supra,)* and authorities cited in the very able opinion of Chief-Justice DARGAN ; *Powell v. Glenn*, 21 Ala. 458 ; 24 Ala. 322 ; 34 Ala. 369 ; 35 Ala. 712.

These views being in conflict with the ruling of the court below, the cause will be reversed, unless the appellant is not entitled to recover upon the title he sets up and claims under.

2. The appellant had assented to the legacy to the first taker—a daughter of the testator—and the slave had been delivered into her possession. Do the words, "*revert to, and become a portion of my estate, and be equally divided among the surviving heirs*", reconvey any title to the executor, he having assented to the legacy, and delivered the property to the first taker ? These words do not, *ex vi termini*, vest any title in him. If they confer any title, it is by implication. But these words perform another office, and can be given effect without assigning to them the office of conferring on the executor the title to the property. They serve to show that the testator desired the *ultimate limitees* to receive the property directly from him, and not from the first taker,

and to limit the words "leaving lawful issue" to such issue living at the death of the first taker, and not an indefinite failure of issue.

After the legacy, by the assent of the executor, had vested in possession in the first taker, his title was at an end, and his assent enured to the benefit of the ultimate limitees, upon the happening of the contingency upon which their title was to become a vested one; and the law favoring the vesting of an estate in ultimate limitees, as against a *reverter*, the courts, in such and similar cases, treat the estate as vested in the parties beneficially entitled, as is done in the case of a mere naked or barren trust.—*Heirs of Capel v. McMillan*, 8 Porter, 202; *Thrasher v. Ingram*, 32 Ala. 645; *Camp v. Coleman*, 36 Ala. 163; *Hill v. Chaffee*, 14 N. H. 215; 1 Roper on Leg. 844, 849–50; *Cox v. McKinney*, 32 Ala. 461; 8 Porter, 529.

The case of *Thrasher v. Ingram*, *supra*, bears directly upon this question; and the case of *Hall v. Chaffee*, *supra*, furnishes a strong analogical argument in favor of the view taken of the effect of the clause last recited, upon the title to the slave in controversy. In that case, the language of the will was very like that used in the case before us; and the main distinction is, that in that case land was the subject of devise, and in this realty and personalty. In that case, the court held that the estate vested in the ultimate limitee upon the happening of the event upon which it was to vest. In this case, we see no reason why any distinction should be made, as to the vesting of the legal title, between the real estate devised and the personalty bequeathed by the sixth clause of the will. If the one vests in the ultimate limitee, there is no reason why the other should not do so likewise. If this limitation of personalty was void at the ancient common law, and has only in modern times been upheld upon the analogies to such limitations of realty, we see no reason, and are not aware of any principle, which would forbid the application of the rule with respect to the vesting of the legal title in the limitations of realty to such limitations of personalty. A different rule of construction would, in this case, vest the title to the realty in the ultimate limitees, and the title to the personalty would vest in

the executor. Not being able to find any authority to maintain such a distinction, upon reason, principle, and authority, we hold that, in this case, the executor has shown no title in himself under the will of David Bethea upon which he can maintain this suit.

It is therefore unnecessary to reverse and remand this cause, and the judgment of the court below must be affirmed.